The People *v.* Keeler.

THE PEOPLE *vs.* KEELER.

A justice of the peace is not a town officer. He is a branch of the judiciary, and his office, and the tenure thereof, are secure from legislative interference or control.

The provisions of the revised statutes in respect to supplying vacancies in town offices, do not apply to or include, justices of the peace.

There was therefore no existing provision of law, for filling a vacancy in the office, at the time of passing the act of February 3, 1849, " to provide for filling vacancies in office."

Accordingly *held* that where a vacancy occurred in the office of justice of the peace, by the death of the incumbent, in 1855, the governor had the power to appoint another person to fill the vacancy.

APPEAL from a decision made at a special term, and reported *ante, p.* 23.

*J. H. Reynolds*, for the appellants.

*S. A. Givens*, for the defendant.

*By the Court,* W. B. WRIGHT, P. J.   Justices of the peace are constitutional officers ; and, in this respect, differ from those executive and ministerial officers, in towns, created by the legislature and existing at its will.   The constitutions of 1777, 1821 and 1846, recognized justices of the peace as a branch of the judiciary ; insomuch that it has not been within the pow- -ers of legislation to abolish the office.   The office, originally held by appointment, was made elective by an amendment of the constitution in 1826, and from that time until 1829, the officer was voted for and chosen at the annual general election of county and state officers.   It was regarded as a county office, and the same provisions for voting and canvassing the ballots, applicable to county and state officers, were applied to it.   The county canvassers were to declare who was elected, the county clerk to send a list of those elected to the secretary of state, and the secretary of state to arrange them in each county, alphabetically.   In 1829, for convenience, the legislature provided that after the 2d January, 1830, justices of the peace should be elected at the annual town meetings ; but they were still to go to the county clerk to take the oath of office, and their terms did not commence immediately after town meeting, but like county officers, began the 1st day of January next succeeding their election.   (*Laws of* 1829, *ch.* 356.)   Any three of the justices of a town were authorized to accept the resignation of any town officer of their town ; but they had no power to accept that of a justice of the peace.   The latter officer could only resign to the supervisor of the town.   (1 *R. S.* 123, 348.)   The regular term of office of a justice of the peace was four years, whilst the tenure of those officers voted for with him, at town meetings, was one year, and until others were chosen or appointed in their places.   (1 *R. S.* 347, § 30.)   In case of an election of a justice of the peace at town meeting, the town clerk was directed to certify to the county clerk the result of such election ; but not so in respect to other officers elected simultaneously ; nor was there any provision that such certificate should be made by any body in case of an appoint-

The People *v.* Keeler.

ment by three justices, or any prescribed mode of legally getting into the clerk's office evidence of such an appointment.

The constitution of 1846, in re-organizing the judicial department of the state, provided that the electors of the several towns should, at their annual town meeting, and in such manner as the legislature might direct, elect a justice of the peace, whose term of office should be four years ; and in case of an election to fill a vacancy occurring before the expiration of a full term, they should hold for the residue of the unexpired term. Their number and classification might be regulated by law. (*Const. art.* 6, § 17.) The effect of these provisions was not to change the existing law applicable to the election of justices of the peace ; their only effect was to restrict their election to the annual town meetings, to fix, unalterably, the tenure of the office, and to declare that a person elected to fill a vacancy, should only hold for the residue of the unexpired term. The legislature could not afterwards provide for electing justices of the peace, at a general election or a special town meeting ; it could not alter the term of office, nor declare that the tenure of a person elected to fill a vacancy should extend beyond the residue of the unexpired term ; but beyond these restrictions, the power of the legislature over the subject matter was left as amply as it had before existed.

The constitution of 1846, in express terms, empowered the legislature to provide for filling vacancies in office. This legislative power would have undoubtedly existed unrestrictedly, had the constitution been silent on the subject. But whilst expressly conferring this authority, there was a limitation put upon it in the organic law. In case of elective officers, no person appointed to fill a vacancy should hold his office by virtue of such appointment, longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy. (*Const. art.* 10, § 5.) A justice of the peace is an elective officer, by the constitution, and by a provision of that instrument the political year begins on the 1st day of January. (*Const. art.* 10, § 6.) In the case, therefore, of a justice of the peace, the legislature can only direct

in what manner a vacancy shall be filled, intermediate its occurrence and the commencement of the political year next succeeding the first annual election after the vacancy happens. At the adoption of the constitution there seems to have been no provision of law for filling a vacancy in the office intermediate the happening thereof and the next annual town meeting; unless, as is claimed, by the appointment of three justices, which will be alluded to hereafter; but the legislature had exercised the power of declaring that justices of the peace, though elected at the annual town meeting, should not enter upon the duties of their office until the first day of January next succeeding their election. Nor was there any provision for filling any vacancy in the office, unless such vacancy actually existed *at the time* of the annual town meeting. In such case the vacancy might be filled by election, and the person elected take the oath of office, and forthwith enter upon the duties thereof. (*Laws of* 1830, *ch.* 290.) Existing provisions of law made the regular term of county and state officers, including justices of the peace, to commence on the first day of January next succeeding their election; and it was manifestly intended by the constitutional provisions referred to, to empower the legislature to provide for filling vacancies, not until the next annual election, but till the commencement of the political year next succeeding such election, being the time fixed for the commencement of the regular term.

In 1849 the legislature acted upon the constitutional provision. In cases where there was no provision by law for filling vacancies, the governor was authorized to appoint some suitable person to execute the duties of the office until the commencement of the political year next succeeding the first annual election after the happening of the vacancy, at which such officer could be by law elected. (*Laws of* 1849, *ch.* 28.) The defendant holds by appointment of the governor, in pursuance of this statute. Such appointment was made in July, 1855; and at the annual town meeting in February, 1856, the relator Forman was elected to fill the vacancy. The defendant insists that he is authorized to execute the duties of the

office until the first day of January, 1857, which will be the commencement of the political year next succeeding the first annual town meeting in Kortright after the happening of the vacancy he was appointed to fill. This would be clearly so, if the office of justice of the peace is within the provision of the statute; and at the time of its enactment there was no existing provision by law for filling a vacancy in such office, occurring under like circumstances.

It is not claimed that there was any existing legal provision for filling a vacancy in the office of justice of the peace, unless he be a town officer, within the meaning and legislative designation of the 11th chapter of the first part of the revised statutes. The 36th section of the third title of that chapter, in the original revision, provided that vacancies in *all town* offices except the office of supervisor, &c., should be supplied by any three justices of the town, by appointment. (1 *R. S.* 348, § 36.) Nor is it seriously pretended that unless the office of a justice of the peace be a town office, as distinguished from a state or county office, and the above section applied, any provision exists, at all, for supplying a vacancy intermediate *its* occurrence and the next annual town meeting, except by appointment of the governor, so that it might happen, in this view, that there would be no justice in the town for a year. The counsel for the people is driven to assume the position that a justice of the peace is a town officer, and nothing else; and that when the legislature declared, in the chapter of the revised statutes devoted to " the powers, duties and privileges of towns," that vacancies *in all town offices* (with certain exceptions) should be supplied by appointment of the justices, they meant to, and did, include the office of justice of the peace, thereby giving the power *to* three justices to create an additional one, and it might be, under certain circumstances, a major part of the judicial force of the town. But, unfortunately for this position, the 36th section was adopted when justices of the peace were elected at the general state election; and when the office was regarded as a county office, and not enumerated in that class of officers which the people, at their town meetings, were empow-

ered to choose, and which, in the chapter referred to, were de-
nominated by the legislature town officers.   When the section
was originally incorporated in the statute, the legislature had
not thought of enumerating justices of the peace among the
officers to be chosen at town meetings, and it is clearly not to
be understood that in prescribing modes for filling vacancies in
the town offices which they had created, any reference was had
to the supplying of a vacancy in an office not enumerated, and
which existed not by statute, but by constitutional provision.
The subsequent statute and constitutional direction to elect jus-
tices of the peace at the annual town meeting, cannot be regard-
ed as a legislative or conventional designation of them as town
officers ; nor is the 36th section to be treated as embracing the
office within its terms.   It did not originally, nor has it since,
by legislative amendment of the chapter in which it is found.
It would have been strange, indeed, if by any legislative amend-
ment the power was lodged in the hands of three justices of
the town to supply a vacancy in an important judicial office,
whilst by the section itself the power was expressly withheld,
of supplying vacancies in the comparatively unimportant office
of overseer of the poor.

A justice of the peace is, in no proper sense, a town officer.
True, he is elected by the electors of a town, and by removing
therefrom his office becomes vacant.   He cannot try civil causes
beyond the limits of his town.   But his jurisdiction is coextensive
with the county in which he resides ; and he can transact crimi-
nal business in any town of the county.   As in the case of other
officers, strictly town officers, a vacancy in the office cannot be
supplied at a special town meeting.   Town officers may take the
oath of office before a commissioner of deeds, or a justice of the
peace or town clerk in their own town.   A justice of the peace
is to take the oath of office before the clerk of the county for
which he may have been elected or appointed.   The town clerk
is to notify town officers of their election, if their names do not
appear on the poll list ; but he is required to transmit to the
county clerk a certificate of the election of a justice of the
peace.   For all purposes excepting as to residence, a justice of

The People *v.* Keeler.

the peace is a county officer, and so regarded by the statutes and several constitutions. (*Gurnsey* v. *Lovell,* 9 *Wend.* 319.) The office is as much above and beyond legislative abolition as that of a justice of the supreme court. To call it a town office, and nothing else, is a palpable misnomer.

A justice of the peace, not being a town officer by legislative or constitutional designation, or in any right sense of the term, but a branch of the judiciary of the state, whose existence or tenure the legislature could not control, it follows that the provisions of the revised statutes, in respect to supplying vacancies in town offices, do not apply to or include justices of the peace. There was therefore no existing provision of law for filling a vacancy in the office, at the passage of the act of 1849. That act authorized the governor, in case a vacancy should occur in any of the offices of the state, to fill such vacancy by appointment; and when the governor appointed the defendant it was a valid exercise of power. By the statute the power of the executive extended to the appointment of a suitable person to execute the duties of the office, not until the next annual town meeting, but until the commencement of the political year next succeeding the first annual election after the happening of the vacancy, at which such officer could be by law elected. The earliest period in which the vacancy in this case could have been supplied by election, was at the annual town meeting on the 12th of February, 1856, and the commencement of the political year next succeeding was the 1st of January, 1857. There seems to have been no question raised as to the power of the governor to appoint, prior to the election of Forman, in February, 1856, to supply the vacancy. It had not been thought that the power was with the justices of the town upon the death of Langley. Immediately after the election of Forman, he took the oath of office and entered upon the discharge of its duties. But the appointment and right of the defendant to execute the duties of the office was not spent, nor would they be, by the terms of the statute of 1849, until the first day of January following. Forman assumed to enter, forthwith, upon the duties of the office, pursuant to a provision of law adopted in

---

Clute *v.* Fitch.

---

1830, as follows : " Whenever one or more justices of the peace shall be elected in any town of this state, to supply a vacancy or vacancies at the time existing, or in any new town, such justice or justices may take the oath of office, and forthwith enter upon the duties thereof." (*Laws of* 1830, *ch.* 290.) But this provision is in conflict with the constitution in relation to filling vacancies in office, and is also inconsistent with the law of 1849, and in part repealed by it. Besides, it only provides for cases where the office is vacant *at the time* of the annual town meeting, which would be the case if the governor should neglect to appoint to fill a vacancy. It is enough, however, that a subsequent statute impliedly repeals it in part, by authorizing the person appointed to execute the duties of the office, to continue to discharge them to the beginning of the political year next succeeding the town meeting at which such officer could be by law elected.

We are of the opinion that the governor had the power to fill a vacancy in the office by appointment ; and he having exercised such power, by appointing the defendant, the latter was entitled to hold until the first day of January, 1857.

The judgment of the special term should be affirmed.

[ALBANY GENERAL TERM, September 7, 1857. *W. B. Wright, Gould* and *D. Wright,* Justices.]