HeNRY Gr. Smith J.,
delivered tbe opinion of tbe Court.
McGraw bad judgment and execution against tbe Memphis & Ohio Railroad Company, and caused a garnishee notice to be served on Knowlton, tbe Treasurer of the company. Knowlton answers, that be was tbe Treasurer, and that there were moneys in tbe Treasury at tbe time of tbe service of tbe notice, and that other moneys have come in since — more than enough to pay McGraw’s judgment.
Tbe language of bis answer, so far as it relates to tbe character of bis possession of tbe moneys, is this: For answer, this respondent states, that be is but tbe servant of said company, under tbe description of Treasurer; and as such, be has no authority or power to ¡control or manage tbe funds of said company, either in its receipts or disbursements, except under tbe immediate mandate and direction of said company; that tbe .assets and effects of said company are, in fact, in tbe actual possession thereof, and be is tbe mere receiving and disbursing agent thereof. Tbe funds or assets, whatever there may be from time to time, are simply in tbe treasury of said company, and in their possession, and be tbe mere possessive agent to carry out tbe instructions of said company, through its President and Directors. And in this sense above, be has possession, if possession it can be called, of tbe funds of said company. And, with this explanation, be proceeds further to answer, that at tbe date of tbe service of tbe garnishment notice upon him, there was then in *437 the treasury of said company, about the sum of $1,692; and there has been since received, from time to time, to the present date, the further sum of $42,-772, all arising from the receipts of the road. Again he states, that, “he did not, at any time, have, individually, the control or possession of any of the funds or effects of the company.”
The question is, 'whether upon this answer, the garnishee, Knowlton, has such possession or control of the funds designated as will authorize judgment to he entered against him for the debt owing to the plaintiff in the execution.
The answer of the garnishee is conclusive, and the judgment to be rendered is such as may be proper upon the statement of fact contained in the answer.
The sec. 8090 of the Code, declares, “All property, debts, and effects of the defendant in the possession of the garnishee, or under his control, shall be liable to satisfy the plaintiff’s judgment from the service of the notice, or from the time they came to his hands, if acquired subsequent to the service of the notice and before judgment.”
The sec. 8097, enacts, that the words, “property, debts and effects,” include in their meaning, “money.”
Moneys, as well as other properties in the possession or1 under the control of the garnishee, are, therefore, garnishable.
These are comprehensive words, “in the possession or under the control.” The meaning and effect of them must be given.
It is not every kind of holding that constitutes the *438 possession designated, nor every possibility of power over the property that gives the control necessary to make it garnishable. The servant who rides his master’s horse to water, or keeps the keys of the stable, and has access to and power to take and nse the horse, has not the garnishable possession and control, by reason merely of such custody and power.
And so .too, the clerk in the store, who has access to the merchant’s safe, and has charge and sale of the merchant’s goods, and the power to receive and pay out money from the drawer or safe, has not, by reason merely of such charge and power, the garnish-able possession and control of the merchandise and money. Such custody and power may exist with the clerk, and still, the merchandise and money not be in his possession and control in such wise as to make them the subject of garnishment in his hands. The custody and power must go beyond such occupation or holding and service, to constitute the garnishable possession and control. Where to draw the line, and precisely to define the rule, is difficult and not safe to attempt — upon one side of which exists, and on the other does not exist, the garnishable condition of the properties. It is safe, however, to say, that mere employment in the service of the owner, in and about his properties, and the physical power, by reason of such employment, to handle, remove, return such properties, to receive and pay out moneys of' the owner, do not constitute the possession and control of the properties contemplated by the law of garnishment. Though such employment gives a degree of physical *439 power over the properties, the possession and control exist with the owner, and not with the employe or servant. Of course such employment may exist, under circumstances with relation to the properties, as to invest the employe with such possession and control as to make them the subject of garnishment in his hands. It is obvious enough, that employment and possession of the garnishable character, may co-exist. But where the actual and substantial possession is with the owner, and the relation of the servant or employe to the properties is such only as is incident to the employment and service, the properties are not subject to garnishment as being in the possession or control of the servant or employe.
The servant who feeds and waters and curries the master’s horse, and keeps the key of the stable, the master having the actual and dominant possession and control; the clerk who opens and shuts the store, and sells the goods, and has charge of the keys of the money drawer and safe, subordinate to the actual possession and control of the merchant; the treasurer of the corporation, who has charge of the safe and the moneys therein, and receives and pays out under the immediate direction and control of the principal corporate officers, are not to be deemed in such possession and control of the properties, as subjects them, the employes and properties, to garnishment. In such and the like cases, the question is, whether the actual and substantial possession is with the employe, or whether his relation to the properties is merely of employment and *440 service, while the real possession and control is with the owner or some other?
These views find authority, if any be needed to commend them to our approval, in the case of Fowler, etc. vs. The Pittsburg, etc., Railroad Company, reported in 35 Penn. Reports, 22. It was there held that a ticket agent of the company was not subject to garnishment, in respect of moneys received by him on the sales of tickets to passengers. See, also, Staniels vs. Raymond, 4 Cushing’s Rep., 314, cited in note 1, to section 482, of Drake on Attachments.
In the case in hand, the answer of the garnishee, Knowlton, is to be taken as true. The answer states, that he is the mere passive servant and agent of the company, and has no authority or power to control the funds of the company, except under the immediate mandate and direction of the company; that the funds are in the treasury and possession of the company, and not in his possession or control. Upon this answer, and the principles hereinbefore stated, it follows that the garnishee must be discharged.
Another question has been largely discussed by counsel, which may properly be disposed of. The answer of the garnishee sets up, by way of defense against the claim of the execution creditor, that the State has a lien upon the funds in question, and therefore they are not garnishable, and subject to compulsory application to the satisfaction of the demands of the creditors of the company.
The supposed lien of the State grows out of the Act *441 of February 11, 1862, chap. 151, which authorised the issuance and loan of the bonds of the State to divers railroad companies, including this company, then going under the name of the Memphis, Clarksville & Louisville Railroad Company. Under this Act, bonds were issued and loaned by the State to this company, to the amount of $1,400,000; which bonds are outstanding, not due, and unpaid. The 4th section of the Act, carried into the Code, secs. 1097 and 1098, enacts, that “When the whole of the road shall he completed, the State shall be invested with a hen, without a deed from the company, upon the entire road, including the stock, right of way, grading, bridges, masonry, iron rails, spikes, chairs, and the whole superstructure and equipments, and all the property owned by the company as incident to or necessary for its business; and all depots and depot stations, for the payment of all the said bonds issued to the company, as provided in this Act and for the interest accruing on said bonds.” The whole of the road was completed several years ago.
Two propositions are undoubtedly true, upon this Act and these facts: 1st, That the lien of the State embraces not only the properties of the description designated in the section copied above, which were in existence and owned by the company at the time of the completion of the road, but also embraces the properties of the kind designated, which have since come into existence and been acquired by the company; and also such'as may hereafter come into existence and be acquired by the company; and, 2d, That the moneys earned by the company in the working of the road, are not em *442 braced within the properties designated in the section copied above; and are, therefore, not embraced by the lien of the State declared by the Act; and consequently are properly applicable to the payment of general debts owing by the company.
Whatever doubts may have been entertained in former' days, as to the possibility of subjecting to a trust or charge, properties not in existence at the time of declaring or contracting for the creation of the trust, there is now no uncertainty as to the doctrine, that a trust, or charge, or lien, may be created in advance of the existence and acquisition of the properties by the party contracting to raise the trust or charge; which trust, charge or lien, will at once invest the properties upon their coming into existence or being acquired by the contracting party, and which will protect such properties against seizure, or application to other purposes than those for which the trust or charge was declared or created. It may be, that liens or trusts of the kind, may not be such as courts of law will notice or enforce, and that the remedies of parties upholding or claiming the benefit of them, can be had alone in the courts, and according to the forms of Chancery. It may be true, also, that the legal title, or right of property in chattels not in existence, is incapable of transfer, or conveyance from one to another. Eather should it be said, that such transfer is not possible by the rules of the common law. Such rule seems to have been grounded upon some notion of a physical impossibility to transfer that which does not exist. It is, however, very certain, that the law-making power could, if desirable, declare and effect, that, under a contract, in *443 advance of tbe existence of the property, the legal title, the whole and only title, shall at once upon the coming of the property into existence, be vested in the party to whom it is contracted, and be subject to and protected by the ordinary remedies of the common law.
Nor in the way of the efficacy of the line of the State as to after created or after acquired properties, is the doctrine which has sometimes been made to defeat such liens - that they rest in covenant or contract between the parties only, and do not arise and specifically lay hold of and inhere to the properties as against third persons, until the parties, by some act between themselves, done after the properties come into existence or ownership, have fixed and fastened the lien upon the properties. It is within the power of the State, by law or contract with the company, to .attach and fasten the lien upon the properties, at the instant of their acquisition by the company, and in such manner and effect as to exclude the ability of third persons to intercept and defeat the lien. This the State has the power to do, and .this it intended to do in the laws upon this subject, and this it has done. And this power, purpose and fact, it is the duty of the Courts of the State to maintain and make effectual. Obviously, if the lien be held to effect only such properties as were in existence and ownership at the completion of the road, the lien would, in the progress of a few years of wear and destruction, be of little value or efficacy to the State, as a security for the payment of the principal and interest of the bonds.
For these doctrines here grouped and crowded into *444 the short compass of expression above, ample authorities may be found in the reported decisions of the Courts of the country: See Pennock, Jr., vs. Cock, 23 How. U. S. Rep., 117; 25 Barbour Rep., 284; id. ib., 484; 18 B. Monroe, 431; 2 Redfield Rail, third edition, ch. 18, sec. 2 and 2a, Title, Remedies of Bondholders.
Upon another ground, the lien of the State upon properties of the designated kind, may be maintained as to properties which have come into existence and ownership of the company since the completion of the road, or which may hereafter come into existence and ownership. The lien declared by the statute, is substantially in the nature of a mortgage; the lien or mortgage is upon the entire road, right of way, grading, bridges, depots, superstructure, equipments, etc. A mortgage embracing in the terms of conveyance the properties designated, may well carry to the mortgagee subsequently acquired properties of the kind which have been placed upon and put into use by the road; and this because they thus become invested with the character and incidents of what are known in the law of real estate as fixtures. It is by no means necessary to constitute a fixture, that it be fastened to freehold, and be immovable or stationary. If these properties be deemed fixtures, they belong, of course, to the mortgagee in a contest between him and the creditors of the mortgagor. It is, however, not necessary to dwell, or indeed, to decide upon this view of the case: See 25 Barb., 424.
The lien of the State, thus comprehensive and efficient, may work injury or loss to individual creditors. *445 This, though matter of regret, is not avoidable. The welfare of the whole, subordinates the interests of the individuals. Whatever may be the practical conduct of the people with regard to the State, the rule which the Courts must declare and enforce, is, that the welfare • of the State must be maintained, though it work hardship, injury or loss to individuals; if such loss or injury be inevitable.
While the State has thus the lien upon the properties designated by the Act of 1852, the opinion of the Court is, that the moneys earned by the company, in working the road, are not comprehended within the lien. Such moneys may be properly employed in the business of the company and the payment of its debts. The consequences are too absurd to admit for a moment, the notion that the earnings of the road are fixed with the lien of the State. Of necessity, those earnings must be applied to the working of the road and the business of the company; otherwise, its working and business would come to a speedy end. If these funds be fixed with the lien of the State, by virtue of this public law they could not only be withheld by the State from working of the road, but disbursements heretofore made to persons who have done service to the company, or who have furnished supplies and equipments, or other materials, or who have received moneys in payment of debts, might be followed by the State, into the hands of such persons, and they be compelled to refund. The lien, being declared by public law, would follow the funds with constructive 'notice. The State did not intend to hold a lien upon *446 the moneys earned by the road — at any rate, not without proper steps be taken to fix the lien by judicial proceedings.
A further answer to the demand of the plaintiff, in the execution, is made by the garnishee — that the Legislature by Act of - —, -, ch. -, authorized the company to borrow money upon the issue of income bonds, and to secure the principal and interest of such bonds, by the mortgage of the properties and income of the road; and that, pursuant to such power, the company issued the bonds, and executed the mortgage upon its properties and income; and that large arrearages of interest remain unpaid upon those bonds, and that the funds in the treasury are greatly inadequate to pay those arrearages.
These bonds carry on their face, interest at the rate of 10 per cent, per annum, which rate was authorized by the Act of the Legislature empowering the company to issue the bonds and pledge the income to their payment.
No public interest appears to require the settlement now of the questions arising upon these bonds, and upon this defense; nor is it essential to the decision of the controversy between these parties, so to do at this time. Decision is, therefore, omitted of these questions.
Reverse the judgment and dismiss the garnishment.