THE PEOPLE, ex rel. DANIEL T. TOWNSEND et al., Appellants, *v.* PETER A. PORTER, as President, etc., et al., Respondents.

The provision of the State Constitution (Art. 6, § 19) giving the legislature the authority to establish "inferior local courts" refers simply to local courts as historically known, that is, courts established within one of the recognized territorial divisions of the State ; it does not authorize the legislature to carve out from the territory of the State a district for judicial purposes not bounded by county, town, city or village lines, and erect therein a local court.

Accordingly *held*, that the provisions of the act of 1881 (Chap. 415. Laws of 1881), " to establish the Niagara police district," which establish a police court for the police district created by the act, were unconstitutional.

Also *held*, that as the creation of the police court was an essential part of the act and necessary to accomplish its purposes, the provisions of the act relating to such court being invalid, the whole act failed.

*People, ex rel. Wood,* v. *Draper* (15 N. Y. 532), and *People, ex rel. McMullen,* v. *Shepard* (36 id. 285), distinguished.

(Argued June 27, 1882; decided October 10, 1882.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made March 31, 1882, which affirmed an order of Special Term denying an application of the relators, as commissioners of police in the Niagara police district, for a peremptory *mandamus*, directing the defendants, the president and trustees of the village of Niagara Falls, to deliver over to the relators the lock-ups,

station-houses and places of detention for persons arrested in said village. (Reported below, 26 Hun, 622.)

The police district created by the act chapter 415, Laws of 1881, entitled " An act to establish the Niagara police district, and provide for the government thereof," comprises that part of the town of Niagara in which is located the incorporated villages of Niagara Falls and Suspension Bridge, together with the intervening territory, and also a portion of the town lying between the village of Niagara Falls and Portage road. The first section constitutes this territory a police district, and declares that a police justice and three commissioners of police shall be appointed therein, with the powers and duties specified in the act. The second, third, fourth and fifth sections prescribe the qualifications, mode of appointment, and the jurisdiction and duties of the police justice. The power to appoint the police justice is vested in the governor, with the consent of the senate. His jurisdiction is made co-extensive with that of justices of the peace and courts of special sessions, as to all crimes and misdemeanors (except charges of bastardy) committed within the police district created by the act, or when the offender shall have been arrested therein, and the jurisdiction thus conferred is declared to be exclusive. He is also vested with exclusive jurisdiction in the first instance, to hear, try and determine all charges of disorderly conduct under the act, or the laws of the State, and also, in all cases, civil or criminal, of violations of by-laws or ordinances of either of the villages of Niagara Falls or Suspension Bridge, and of actions for penalties imposed by the act. The sixth and subsequent sections of the act relate to the organization of the police department. They provide for the appointment, by the governor and senate, of a board of police, to consist of three commissioners. The board so to be constituted is vested with the appointment and control of a police force, to consist of a chief of police and not more than six police constables, and such extra or special police constables as the board may deem it necessary or advisable to appoint on election days, or in cases of emergency. By section 33, the commissioners of police are vested

with exclusive power to license hackmen, truckmen, porters, etc., within the police district, and to fix the license fee, and to make rules and regulations for their government, and to limit and prescribe their compensation. By section 34, and other sections, various acts are prohibited, under a penalty. By section 43, all actions for penalties, under the act, are to be brought in the name of the commissioners of police, before the police justice. By section 20, it is made the duty of the officer who shall arrest any person under the authority of that section, or by virtue of any warrant or process, to take the person so arrested immediately thereupon before the police justice, to be dealt with according to law. The proceedings and judgments of the police justice are, by the third section, reviewable in the same manner, and to the same extent, as the judgments and proceedings of justices of the peace, or courts of special sessions. The forty-seventh section repeals the act entitled " An act to provide for the election of police justices in villages, " passed June 7, 1875, so far as it is applicable to either of the villages of Niagara Falls or Suspension Bridge.

*T. E. Ellsworth* for appellants. The legislature had power under the Constitution to establish the police district proposed by the act of 1881 (Chap. 415), and to provide for its government. (Constitution, art. 10, § 2; *People, ex rel. Wood,* v. *Draper,* 15 N. Y. 532; *People* v. *Pinckney et al.,* 32 id. 381; *People* v. *Shepard,* 36 id. 285.) That part of the act which provides for the appointment of a police justice will stand on its own constitutional rights. (*Sill* v. *Village of Corning,* 15 N. Y. 300; *B'k of Chenango* v. *Brown,* 26 id. 467; *People* v. *Flagg,* 46 id. 401; Constitution, §§ 18, 19, art. 6.) The apportionment of taxes for defraying expenses, as provided for in the act, was within the power of the legislature. (*People* v. *Mayor of Brooklyn,* 4 N. Y. 425; *Matter of Van Antwerp,* 56 id. 265; *Matter of Flatbush,* 60 id. 406; Potter's Dwarris on Statutes, 406–416, 420–427.) The act is not repugnant to section 16 of article 3 of the Constitution; it embraces but one subject, and that is expressed in the title. Establishing a police district necesarily embodies providing for its govern-

ment.  (*People, ex rel. City of Rochester,* v. *Briggs,* 50 N. Y. 553 ; *Matter of Astor,* id. 363 ; *Matter of Volkening,* 52 id. 650 ; *People* v. *Quigg,* 59 id. 88 ; *Nauendorff* v. *Duryea,* 69 id. 559 ; *Matter of Village of Middleton,* 82 id. 196.)   The act is public in its nature.   (*Burnham* v. *Acton,* 7 Robt. 395.)

*Cyrus E. Davis* for respondents.   The act of 1881 (Chap. 415) is violative of section 2 of article 10 of the Constitution.   (*People, ex rel. Bolton,* v. *Albertson,* 55 N. Y. 50.)   It is also in violation of section 19, of article 6 of the Constitution.   (*Sill* v. *Village of Corning,* 15 N. Y. 297 ; *Brandon* v. *Avery,* 22 id. 469 ; *Village of Deposit* v. *Vail,* 5 Hun, 310.)

ANDREWS, Ch. J.   It is quite plain that the appointment of a police justice, and the creation of a police court for the police district created by chapter 415, of the Laws of 1881, was an essential part of the scheme of legislation thereby enacted. The jurisdiction conferred upon the police justice was not concurrent, but was exclusive.   The ordinary jurisdiction of justices of the peace and of Courts of Special Sessions, in criminal cases within the territory comprising the police district, was taken away and vested in the new officer.   The act created new offenses, of which the police justice alone had cognizance.   Actions for penalties, whether founded upon violations of by-laws or ordinances of the villages embraced in the new division or given by the act itself, were to be brought before him.   The police officers were required to take all persons arrested before the police justice, to be dealt with according to law.   The creation of the office of police justice, and the existence of that office, is essential to accomplish the purposes of the act, and to the effective execution of the duties enjoined upon the police force.   Without the police justice, the penalties given by the act could not be enforced, the directions to police officers in respect to the arrest of offenders, could not be obeyed, and if the part of the act creating the office of police justice is eliminated, and the other parts remain in force, the result would be that the villages would be

left without the power to select a police justice under chapter 514, of the Laws of 1875, because by section 47 of the act in question, the act of 1875, so far as it applies to the villages embraced in the Niagara police district, is repealed. The excision of the parts of the act relating to the appointment and jurisdiction of the police justice, would destroy the harmony of the scheme, and leave as has been said many of its provisions incapable of enforcement. We cannot assume, under these circumstances, that the legislature would have passed the act, except as a whole, and if the parts relating to the appointment and jurisdiction of the police justice are invalid, the whole act fails.

The constitutional validity of the provisions creating the office of police justice, and prescribing his jurisdiction depends upon the construction of the first clause of section 19, article 6, of the Constitution, which is as follows: "Inferior local courts of civil and criminal jurisdiction, may be established by the legislature." This clause in its present form, was introduced into the Constitution by the amendment of 1869. It was substituted for the provision in the Constitution of 1846 (Art. 6, § 14), that "inferior local courts of civil and criminal jurisdiction may be established by the legislature in cities, and such courts, except in the cities of New York and Buffalo, shall have an uniform organization and jurisdiction in such cities." The question here is, whether the police court created for the Niagara police district, embracing a territory defined by the act and not coterminous with the boundaries of any county, town, city or village, is a local court within the meaning of the Constitution. In determining this proposition it may be assumed that the establishment of courts of justice, in the absence of constitutional restriction, is a part of the power and prerogative of the legislature. While the legislature cannot exercise judicial power, it may, unless prohibited by the express or implied provisions of the Constitution, create judicial tribunals for the whole or any part of the State, and determine their power and jurisdiction in matters of State and local cognizance. This principle was recognized and applied

in *Sill* v. *The Village of Corning* (15 N. Y. 297), to uphold the constitutionality of an act of the legislature authorizing the appointment of a police justice for the village of Corning. It was contended in that case that the provision of the Constitution of 1846, in force when the act was passed, authorizing the establishment by the legislature of inferior local courts "in cities," impliedly prohibited their establishment in villages or other localities, but the majority of the court were of the opinion that such prohibition could not be implied from that provision alone, and resting upon the doctrine of the plenary power of the legislature over all subjects of legislation except where restricted by the Constitution, the court affirmed the validity of the law.

The amendment of 1869 covers the whole subject of legislative power, in creating inferior and local courts, and in ascertaining the validity of a legislative act creating a judicial tribunal for a part of the State, the test is, whether it is an inferior and local court within the meaning of the Constitution. The Constitution does not in terms define the meaning of the word "local" as used in section 19 of article 6. A court established for one or more counties, or for several towns, cities or villages, embracing contiguous territory, or for a part of a town, is undoubtedly a local court within the general and broad meaning of the word "local," and as distinguished from a court established for the whole State. The question is, whether the word was used in this large sense in the clause of the Constitution authorizing the establishment of local courts. It requires but a very cursory· reading of the Constitution to discover that the separation of the State into counties, towns, cities and villages, for the purpose of local government, is an essential part of the framework of the State government, and that these were the only divisions for the purpose of local government contemplated by the framers of that instrument. The perpetuation of these divisions is essential to many of the arrangements of the Constitution, and their continued existence, and the expansion of the system, is provided for. The power of the

legislature to erect new counties and towns is recognized in section 5, article 3, and it made the duty of the legislature, by section 9, article 8, to provide for the organization of cities and villages. The Constitution, for the purpose of representation in the legislature, divides the State into senate districts, some of which embrace two or more counties, and members of assembly are to be elected in districts comprising towns or wards, where counties are entitled to more than one member. But, we repeat, for the purpose of local government, the Constitution contains no hint of any civil divisions of the State except those we have enumerated. Counties, towns, cities and villages are the localities known to the Constitution. These divisions did not come into existence with the present Constitution. They existed long anterior to the organization of the State government. As early as 1683 the province of New York was, by an act of the general assembly, divided into counties and towns (2 Rev. Laws, app.), and the charter of the city of New York, known as the Dongan charter, was granted in 1686. These acts rather recognized divisions already existing than established them. From this time on, during all the changes in government, the civil divisions of counties, towns and cities have continued. Incorporated villages existed from an early period. Laws relating to villages will be found among the earliest statutes of the State (Index to Laws). Almost coeval with the establishment of these local divisions local courts were established for the territory comprised in them. In 1664, under the code known as the Duke's Laws, justices of the peace were commissioned for each town, and a local court established therein for the trial of petty causes, and in 1682, during the administration of Gov. Dongan, the general assembly passed an act to "settle courts of justice." The act created four distinct tribunals : a petty court for the trial of small causes, for every town; a court of sessions for each county; a court of oyer and terminer, having civil and criminal jurisdiction throughout the province; and a court of chancery. (2 Rev. Laws, app.; History of the Judicial Organization of the State, Pref. 1, E. D. Smith's Rep.)

In the cities of New York and Albany a mayor's court existed long before the adoption of the first State Constitution. The territorial jurisdiction of the local courts, from the earliest period, was co-extensive with one of the recognized civil divisions, or was a court within a city or village.

The Constitution of 1846, and the judiciary article adopted in 1869, deals with the subject of local courts, and neither in 1846 nor 1869 were any local courts known, or in existence, except courts in counties, towns, cities and villages. By section 15, article 6, the existing county courts are continued. By section 12 of the same article, certain city courts in the cities of New York, Brooklyn and Buffalo are also .continued. Section 18 provides for the election of justices of peace in towns, and for the election of justices of the peace and district court justices in the different cities of the State. Section 12, article 14, provides that " all local courts established in any city or village, etc., shall remain, until otherwise directed by the legislature, with their present powers and jurisdictions." The general authority given to the legislature by section 19, article 6, to establish inferior local courts, supplements the other provisions, and was doubtless intended to authorize the legislature to establish local courts on the organization of new cities or villages, requiring the establishment of local judicial tribunals therein, or where in an existing city or village, the existing courts were inadequate. But we are of opinion that the language of this section must be construed to refer to local courts, as historically known, that is, courts established for and within one of the recognized territorial divisions of the State, and as a part of the system of local government, and that it cannot be so construed as to authorize the legislature to carve out from the territory of the State, a district for judicial purposes, not bounded by town or county, city or village lines, and erect therein a local court. This construction is confirmed by what has been called the political tendency of the Constitution. The intention of the instrument was to define, as far as practicable, all the courts of the State, and so far as they are defined, they are either courts

of general jurisdiction, co-extensive with the whole State, or courts of counties, towns, villages or cities. By the section in question a flexible provision was made to meet the wants of new political communities, which from time to time should be organized according to the general plan. The Constitution seems carefully to guard the autonomy of the several divisions in all matters of local government, and to avoid, as far as practicable, any confusion or division of powers, or any obliteration of their local independence and control in all matters of local government. No county can be divided in the formation of a senate district, unless it shall be equitably entitled to two or more senators (§ 4, art. 3), and no town can be divided in the formation of an assembly district (§ 5, id.), and by the Constitution of 1846, no county could be divided in the formation of a judicial district, and the amendment of 1869 continues the existing districts in force until changed by the legislature. The amendment in 1874 very clearly recognizes counties, towns, cities and villages as the units of division of the State. Section 10, article 8, prohibits the State from giving or loaning its credit or money in aid of any corporation or private undertaking. Section 11 extends the same prohibition to counties, cities, towns and villages. It would scarcely be claimed that this prohibition could be avoided by the organization by the legislature of a new civil division, with authority to give or loan its money or credit for the purposes mentioned. It would not, we think, comport with the spirit of the Constitution, to allow a portion of a town, or of a county, not constituting either a city or village, to be dissevered for local judicial purposes, from the rest, leaving it a unit for all other purposes of civil government. It would tend to a separation and confusion of interests, and impair the usefulness of the system of town and local government, plainly fostered by the Constitution. For these reasons we think the act in question is unconstitutional, and it is therefore unnecessary to consider whether, if the act had simply established the Niagara police district, for the purpose of police supervision only, it could stand within the case of *People, ex rel. Bolton,* v. *Albertson* (55 N. Y. 50).

The question we have considered was not involved in the. case of *People, ex rel. Wood,* v. *Draper* (15 N. Y. 532), or the case of *People, ex rel. McMullen,* v. *Shepard* (36 id. 285), which followed it.

The judgment should be affirmed, with costs.

All concur, except TRACY, J., who does not vote.

Judgment affirmed.