### ROCKWELL *v.* RAYMOND.

*(City Court of Yonkers. May 15, 1889.)*

COURTS—JURISDICTION—LOCAL COURTS.

Const. N.Y. art 6, § 19, providing for the establishment of "inferior local courts," limits the jurisdiction of such courts to the locality for which they are established, and an act authorizing the service, beyond the limits of the city of Yonkers, of summons from the city court of Yonkers, an "inferior local court," established in pursuance of the constitutional provision, is void.

Action by Julius T. Rockwell against Charles E. Raymond.
*James P. Sanders*, for plaintiff. *Joseph S. Wood*, for defendant.

THAYER, C. J. This is an action upon a promissory note given by the defendant, dated at Mt. Vernon, N. Y., and payable at the Bank of Mt. Vernon in that place. Mt. Vernon is in the town of East Chester, a town in the county of Westchester, adjoining the city of Yonkers. The plaintiff resides in the city of Yonkers. The defendant resides in the town.of East Chester, and was served with the summons and complaint in this action in said town. It is proved, and not denied, that the note, with interest and costs of protest, is due and unpaid. The defendant answered, alleging simply that by reason of such service of the summons this court has not jurisdiction of the person of defendant, and that is the only question at issue in this case. The city court of Yonkers was established by the act of the legislature incorporating the city of Yonkers. Laws 1872, c. 866. That act provides, in title 2, §§ 1, 2, 5, for the election, among other city officers, of a city judge, whose term of office shall be four years. In addition to certain jurisdiction in criminal matters, it is provided (title 4, § 1) that "he shall possess all the powers and jurisdiction, and be subject to all the liabilities, of justices of the peace within said city. He shall also have the same jurisdiction and power within the city of Yonkers as is by law conferred upon the marine court in the city of New York, except in cases of appeal. * * * In all civil actions and proceedings before said city judge, his court shall be called the ' City Court of Yonkers,' * * * and said city judge shall further have and exercise within said city" certain powers of a county judge. By Laws 1873, c. 61, entitled "An act in relation to the city court of Yonkers," it is provided, (section 1:) "The city court of Yonkers, as heretofore constituted by law, and as continued by this act, shall be a court of record to and for all intents and purposes

and shall continue to be vested with and shall have the same jurisdiction and power within the city of Yonkers as is by law conferred upon the marine court of the city of New York within the city of New York at the time of the passage of this act, except in cases of appeals, and shall have such other jurisdiction as is conferred upon and vested in said court by this act or any other act. Sec. 2. The city judge of Yonkers shall be the judge of said court, and shall have and possess all the powers and jurisdiction heretofore conferred upon him. He shall also have the powers within said city of Yonkers which any justice or judge of the marine court of the city of New York hath by law within the city of New York. He shall also have the same jurisdiction and power as a justice of the peace of towns." By section 3, civil jurisdiction is given in actions for the recovery of money only, where the amount does not exceed $1,000, exclusive of costs, "provided that one of the parties to the action shall be a resident of the city of Yonkers, or a resident of a town in the county of Westchester adjoining said city, or the defendant shall have property within said city which may be taken upon attachment in such action; and the summons shall be served within the limits of said city, or within the limits of an adjoining town." The above section 3 of this act was amended by Laws 1874, c. 171, the clause in reference to the service of the summons being changed so as to read: "and the summons may be served within the said city or at any place within Westchester county." In another "act in relation to the city court of Yonkers," (Laws 1878, c. 186,) these provisions with regard to residence of parties and service of summons were re-enacted in substance, and they are embodied in the Code of Civil Procedure, §§ 3203–3205.

It is admitted that by the statutes above referred to it was the clear intention of the legislature to confer jurisdiction upon this court in exactly such cases as the present, but it is maintained by the defendant that the attempt to give to the city court of Yonkers any territorial jurisdiction outside of the limits of the city of Yonkers is in violation of the constitution of this state, and that the statutes which purport to give such jurisdiction are *pro tanto* unconstitutional and void. It becomes necessary, therefore, to examine the source and extent of the legislative power in this particular. "The state, as to subjects of a domestic nature, is a sovereign political power, and the legislature can provide such agencies for the administration of the law and the maintenance of public order as it shall judge suitable where no prohibition expressly made or necessarily implied is found in the constitution." *Sill* v. *Village of Corning*, 15 N. Y. 297. The constitution provides a complete judicial system for the state. It establishes, or continues, the court for the trial of impeachments, the court of appeals, the supreme court, the county courts, surrogates' courts, certain city courts; also the courts of justices of the peace. It provides for the election or appointment of justices of the peace, district court justices, and other judicial officers in the different cities of the state. And finally, to meet cases not adequately covered by any of these provisions, it declares, (article 6, § 19,) "Inferior local courts of civil and criminal jurisdiction may be established by the legislature." These constitutional provisions, constituting an entire and harmonious judicial system for the state, were doubtless intended to cover the whole ground. The powers and jurisdiction of each court are defined. The extent to which the legislature may modify or add to them, and the cases in which new courts may be established, are carefully and explicitly laid down. It follows by necessary implication that no new courts can be organized except in accordance with these provisions. *Sill* v. *Village of Corning*, 15 N. Y. 297; *People* v. *Porter*, 90 N. Y. 68. The city court of Yonkers is not one of the courts expressly recognized by the constitution. It is wholly a creature of the legislature, and the only constitutional authority for its creation is to be found in article 6, § 19, above quoted, the authority to establish "inferior local courts of civil and criminal jurisdiction."

The question to be decided, then, is: What is an "inferior local court" within the meaning of the constitution? What is the scope of a "local" court? This question has been considered by the courts in a number of reported cases. The case of *Sill* v. *Village of Corning*, referred to above, arose in 1857, under the constitution of 1846, prior to the adoption of the amended judiciary article of 1869. Article 6 of the constitution of 1846, § 14, provided that "inferior local courts of civil and criminal jurisdiction may be established by the legislature in cities." It was held, DENIO, C. J., writing the opinion, that the legislature was not prevented from organizing a local court in a village. It does not appear that the court created in that case, viz., a police court for the village of Corning, was given any jurisdiction outside of the village limits. Laws 1854, c. 127, chartering the village of Ilion, created a police justice, and gave him, within the village, the jurisdiction of a justice of the peace of the town of German Flats. It was held, COMSTOCK, C. J., writing the opinion, that the act was constitutional as creating a local and inferior court, the territorial jurisdiction of which was confined to the limits of the village. *Brandon* v. *Avery*, 22 N. Y. 469. A similar case is *Bocock* v. *Cochran*, 32 Hun, 521. In *Village of Deposit* v. *Vail*, 5 Hun, 310, it was held that under Laws 1873, c. 330, which provided for a police justice for the village of Deposit, with the jurisdiction possessed by justices of the peace, his acts to be effectual in each of the counties of Broome and Delaware, (the village being partly in each county,) the jurisdiction of the justice was limited to the village of Deposit, and that "an inferior local court" was established within the meaning of section 19, art. 6 of the constitution. In *Bank* v. *Bradley*, 19 N. Y. 245, the point was raised that the superior court of Buffalo had no jurisdiction of a defendant who was not personally served with the summons in that city. It was held that after judgment it was to be presumed in support of the jurisdiction of the court that a defendant sued as indorser on a note dated at Buffalo made his indorsement within the city, and this brought the case directly within the provision of the act establishing the court, which gave it jurisdiction of the subject-matter without regard to the residence of the defendant, or where the summons was served. The constitutionality of that provision was not considered.

The city court of Brooklyn was established under the authority of the constitution of 1846, and was continued by the amended judiciary article of 1869, "with such further civil and criminal jurisdiction as may be conferred by law." It was held in *Landers* v. *Railroad Co.*, 53 N. Y. 450, that the legislature had no power to enlarge its territorial jurisdiction. This decision was followed in *Hoag* v. *Lamont*, 60 N. Y. 96. See, also, *Hutkoff* v. *Demorest*, 103 N. Y. 377, 8 N. E. Rep. 899. In *Waters* v. *Langdon*, 40 Barb. 408, the act under consideration created a police justice for the village of Whitestown, with the powers and jurisdiction of a justice of the peace of the town of Whitestown. It was held unconstitutional, as providing for the election of another justice of the town by a part of the town, and in a manner not authorized by the constitution; citing *Sill* v. *Village of Corning*, and *Brandon* v. *Avery*. This case is quoted with approval in *Geraty* v. *Reid*, 78 N. Y. 64. In the latter case, which was decided in 1879, the question involved was whether the justice's court of Brooklyn could send its process outside of the city. The act (Laws 1849, c. 125, § 35) provided for the election of justices of the peace for the term of four years, "who shall have the same jurisdiction in said city that justices of towns have by law in respect to the towns for which they have been elected * * * and they shall be deemed Justices of the Peace of the County of Kings." The act was amended, (Laws 1850, c. 102,) and it was provided that the said justices "shall have the like jurisdiction in all civil cases as is now exercised by the justices of the peace of the towns in this state, in addition to the powers and jurisdiction given them under the said act hereby amended." Under this it was claimed that

they could send their process into adjoining towns.  The summons was served in the town of New Lots.  The defendant appeared and pleaded want of jurisdiction.  The court of appeals held that the justice acquired no jurisdiction by the service of the summons outside of the city limits.  CHURCH, C. J., writing the opinion of the court, after quoting the constitutional provision for "inferior local courts," and citing *Sill* v. *Village of Corning, Brandon* v. *Avery,* and *Waters* v. *Langdon,* says: "Under these authorities it appears to us that the proper construction of the acts referred to is that the words ' in said city ' were intended to restrict the exercise of the jurisdiction of the officers in question to the limits of the city, and that the general language of the act of 1850, conferring additional jurisdiction, does not impair the force of this restriction, but refers only to the power and jurisdiction which might be exercised within the city.  This view is confirmed by the consideration that the other construction would render the act invalid.  *  *  *  The only authority conferred [by the constitution] is to establish local and inferior courts.  The jurisdiction of a local court must be exercised within the locality, and its process cannot be executed outside of it.  Whatever power constitutional justices of the peace may possess to send their process into adjoining towns, no local court created under the clause referred to could be vested with that power."  What effect the amended constitution of 1869 would have is not considered, as the acts referred to were passed in 1849 and 1850.  The case of *People* v. *Porter*, 90 N. Y. 68, arose under the amended constitution. The act considered here was chapter 415 of the laws of 1881, which sought to establish the "Niagara Police District," comprising that part of the town of Niagara in which is located the incorporated villages of Niagara Falls and Suspension Bridge, together with the intervening territory, and also a portion of the town lying between the villages of Niagara Falls and Portage Road.  It also created a police court, and provided for the appointment of a police justice for the district.  The court say, ANDREWS, C. J., writing the opinion: "The constitutional validity of the provisions creating the office of police justice, and prescribing his jurisdiction, depends upon the construction of the first clause of section 19, art. 6, of the constitution," quoting the language, "Inferior local court," etc.  "The question here is whether the police court created for the Niagara police district, embracing a territory defined by the act, and not coterminous with the boundaries of any county, town, city, or village, is a local court within the meaning of the constitution.  *  *  * The amendment of 1869 covers the whole subject of legislative power in creating inferior and local courts.  *  *  *  A court established for one or.more counties, or for several towns, cities, or villages, embracing contiguous territory, or for a part of a town, is undoubtedly a local court within the general and broad meaning of the word ' local.'  *  *  *  The question is whether the word was used in this large sense in the clause of the constitution authorizing the establishment of local courts."  The opinion proceeds to show in some detail that the separation of the state into counties, towns, cities, and villages, for the purpose of local government, is an essential part of the framework of the state government; that these were the only divisions for the purposes of local government contemplated by the framers of that instrument; that "the constitution seems carefully to guard the autonomy of the several divisions in all matters of local government, and to avoid, as far as practicable, any confusion or division of powers, or any obliteration of their local independence and control in all matters of local government;" that "the territorial jurisdiction of the local courts, from the earliest period, was co-extensive with one of the recognized civil divisions, or was a court within a city or village."  The court say: "We are of opinion that the language of this section" (section 19, art. 6, Const.) "must be construed to refer to local courts, as historically known; that is, courts established for and within one of the recognized territorial divisions of the state, and as a part of the system

of local government; and that it cannot be so construed as to authorize the legislature to carve out from the territory of the state a district for judicial purposes not bounded by town or county, city or village lines, and to erect therein a local court." The act in question was held unconstitutional as far as it attempted to establish a local court; and, as the court was an essential part of its scheme, the whole act failed. See, also, *Conor* v. *Hilton*, 66 How. Pr. 144.

There are cases which hold that it is within the constitutional authority of the legislature to establish new civil divisions of the state, embracing in the districts so created several towns, cities, or counties, or such portions thereof as may be deemed appropriate for the general purposes of civil administration, provided that no "arrangement of the machinery of the government which the constitution has provided will be impeded or disturbed." See *People* v. *Draper*, 15 N. Y. 532, (the case of the Metropolitan Police District;) *People* v. *Shepard*, 36 N. Y. 285, (the case of the Capital Police District;) *People* v. *Albertson*, 55 N. Y. 50. These cases, excepting, perhaps, the latter, do not involve the question of local courts, and in the latter case the act under review was held unconstitutional. The court of common pleas for the city and county of New York, the superior court of the city of New York, the superior court of Buffalo, and the city court of Brooklyn, which are called in the Code of Civil Procedure, § 3343, "Superior City Courts," although local courts, appear to have in certain cases authority to send their process beyond their localities, and to any part of the state. Code, § 278. This appears to be due to the fact that these courts were in existence prior to 1869, and were then in the exercise of certain jurisdiction which had been conferred upon them by previous legislation which was expressly continued and confirmed by the constitutional amendment of that year. See Throop's Notes to section 263 of Code of Civil Procedure. See, also, *Gemp* v. *Pratt*, 7 Daly, 197; *Whitehead* v. *Kennedy*, 6 Daly, 546; *Hutkoff* v. *Demorest*, 103 N. Y. 377, 8 N. E. Rep. 899. The marine court of the city of New York, after which the city court of Yonkers was in part modeled, could not send its summons beyond the city of New York. Code, § 338. The provisions of law relating to the district courts of the city of New York shed no light upon the question under discussion, as those courts are regulated by a separate section (section 18) of the judiciary article of the constitution, which provides that "justices of the peace and district court justices shall be elected in the different cities of this state, in such manner, and with such powers, and for such terms, respectively, as shall be prescribed by law." There can be no doubt, however, under the authorities cited above, that the jurisdiction of such courts must be limited to the cities in which they are established. It appears from a careful review of all the authorities which I have been able to find, that no local court can be authorized by the legislature to send its summons beyond the "locality" in which it exists. The locality of the city court of Yonkers is the city of Yonkers. It was established by the charter of the city of Yonkers as a part of the system of local government. The statutes extending its jurisdiction beyond the city, if carried out, subject citizens of other parts of the county of Westchester to a tribunal which they have had no voice in choosing, and the people of Yonkers to the burden of maintaining a court for deciding controversies in which they have no interest, and between parties who contribute nothing to its support. Local self-government is the theory of the constitution. *People* v. *Albertson*, 55 N. Y. 50. As was said by Judge ALLEN in the latter case, if the public interest requires that the governmental machinery of a city be extended over adjoining towns or parts of towns, the city limits may be extended. There is no apparent necessity for the extension of the jurisdiction of the city court of Yonkers over adjoining towns. They have or may have their own local tribunals, and the county court is open to them and to the people of Yonkers alike. If the extended

jurisdiction is proper, other local courts may be vested with similar jurisdiction; the people of Westchester may be summoned hither and thither throughout the county, at the convenience or caprice of suitors; and the county court, —the constitutional tribunal of the county,—may be superseded by an indefinite number of local courts. The city court of Yonkers, under existing laws, is an anomaly. It partakes of the attributes of a county court, a city court, and a justice's court, all at once. There seems to be no place in the scheme of the constitution for such a court. It is only as a city court, in the strict sense of the term, that it has constitutional sanction. The court, as originally established by the city charter, was an inferior local court within the meaning of the constitution; and the act creating it was free from constitutional objections, the jurisdiction conferred being confined to the city of Yonkers. The extraterritorial jurisdiction was conferred by subsequent acts. It is a familiar principle, recognized and declared in many of the cases cited above, that where a part of an act or a series of acts is unconstitutional, it does not invalidate the whole, unless it is so connected with the remainder that the whole must stand or fall together. The denial of jurisdiction to the city court outside of Yonkers, does not in the slightest degree impair any power and jurisdiction given to it by law in and for that city. It has been with great hesitation that I have reached a conclusion in this matter. The deliberate action of the legislature, reiterated as it is in this case in several statutes, is not lightly to be nullified. Moreover, as has been suggested, it is not usual for an inferior court, where jurisdiction is expressly given by the legislature, to adjudge itself to be without jurisdiction upon constitutional grounds. But here the question of jurisdiction is sharply presented, and is absolutely the only question at issue in the case. In such circumstances it seems to be the duty of the court to meet the question, and pass upon it conscientiously. My conclusion is that this court acquired no jurisdiction of the defendant in this action by the service of the summons upon him in the town of East Chester, for the reason that the provisions of law authorizing such service are unconstitutional and void. The complaint must be dismissed for want of jurisdiction of the person of the defendant; and, inasmuch as the plaintiff brought his action in good faith, and in conformity with the law as it has stood and has been acted upon for years, the dismissal is without costs.