*46 Vroom.*                    Fagan v. Payne.

IN RE PETITION MARK M. FAGAN, ROBERT J. SMITH ET
   AL., PLAINTIFFS IN ERROR, v. JOHN C. PAYNE ET AL.,
   DEFENDANTS IN ERROR.

Argued June 29, 1904—Decided November 15, 1904.

*Pamph. L.* 1894, *p.* 524, § 1, provides that the terms of office of mem-
   bers of the boards of street and water commissioners of cities of
   the first class, thereto appointed under *Pamph. L.* 1891, *p.* 249,
   providing for their appointment by the mayors, shall immediately
   end.    Section 2 provides for a new appointment of persons to
   constitute the board, till members to be elected shall qualify, and
   sections 3 and 6 define the powers of such newly appointed board,
   and direct its methods of organization.    Section 4 provides that,
   at the next election to be held in each city of the first class, there
   shall be elected five members of such board for such city—two for
   one year, two for two years and one for three years—and that
   at each election thereafter there shall be elected a member or
   members of the board to succeed the member or members whose
   term then expires, for the term of three years.    Section 5 directs
   that, on the ballots to be used at the election to be held in such
   cities in 1895, the designation of the office to be filled shall be
   "for members for term of one year," "for members for term of
   two years" and "for members for term of three years," and that
   at each election thereafter the designation shall be "for member
   or members of board."    Section 7 provides that the mayor of each
   city shall have power to remove members of the board for cause,
   and section 8 provides how vacancies shall be filled by the mayor.
   *Held*, that section 4 applies to all cities of the first class, though
   afterwards coming into the class, and, with sections 7 and 8, con-
   stitutes a complete elective scheme, so that such parts of the act
   will stand, even if section 5 is special legislation, as applying
   only to existing cities of the first class, and sections 2, 3 and 6
   are unconstitutional, as the purposes of the latter sections are
   only incidental to the main purpose displayed by section 4, and
   the vicious parts are distinct and separable, and when they are

stricken out, enough remains to be a complete act, capable of being carried into effect, and sufficient to accomplish the object of the law as passed in accordance with the intention of the legislature.

---

On error to the Supreme Court, whose opinion is reported in 41 *Vroom* 341, *sub nom. In re Fagan, Mayor, &c.*

For the plaintiffs in error, *Allan L. McDermott.*

For the defendants in error, *Collins & Corbin* and *George L. Record.*

The opinion of the court was delivered by

REED, J. By the act of 1891 (*Pamph. L., p.* 249; *Gen. Stat., p.* 465), the mayors of cities of the first class were directed to appoint five persons as street and water commissioners—one for the term of three years, two for the term of four years and two for the term of five years—and, at the expiration of the term of service of each of these commissioners, others were to be appointed in their place for the term of five years. In 1894 (*Pamph. L., p.* 524; *Gen. Stat., p.* 465), a supplement to the preceding act was passed, the purpose of the supplement was to make the board elective instead of appointive, to at once end the terms of office of the then members of the board, and to provide for a temporary board until a charter election could be held. The present contest is between those claiming to be members of the board by virtue of an election under the supplement and those claiming by virtue of an appointment by the mayor under the act of 1891. The claim of the latter is asserted upon the ground that the supplement providing for an elective board is unconstitutional. The vice of the supplemental legislation, as it is insisted, is that it is special, in that it will not apply to cities hereafter growing into the first class.

NOTE.—This case should have been printed in 42 *Vroom.* The original opinion was not delivered to the reporter with the cases of June Term, 1904, and upon investigation found to be lost. It is now printed from a copy which has been examined by Mr. Justice Reed.—REP.

The section of the supplement which provides for the termination of the terms of the old board is section 1. It enacts that the terms of office of the members of the board theretofore appointed under the original act shall end upon the passage of the supplement. Section 2 provides for a new appointment of persons, who shall constitute the board until an election shall be held, and those members elected shall have qualified. Section 3 defines the powers of this appointed board, and section 6 directs the method of organizing such board. The provisions concerning the election of a new board are contained in sections 3 and 4. Section 4 provides that at the next municipal or charter election to be held in each city of the first class, there shall be elected five members of the board of street and water commissioners for said city, two of whom shall be elected for the term of one year, two for the term of two years and one for the term of three years, and that at each municipal or charter election thereafter there shall be elected a member or members of the board of street and water commissioners, to succeed the member or members whose term then expired, for the term of three years. Section 5 directs that upon the ballots to be used at the election to be held in said cities in 1895 the designation of the office to be filled shall be as follows: For members for term of one year, for members for the term of two years, for members for the term of three years—and that at each election thereafter the designation of the office to be filled shall be as follows: "For member or members of board." Section 4 (the first of these sections) provides a scheme which seems to be applicable not only to any existing cities of the first class, but also to any city which should thereafter come into the class. The "next municipal or charter election" would, as to existing cities, be the first election after the passage of the act, but, as to any future city, the first election held in same. This section, it is perceived, together with section 7, providing that the mayor of each city of the first class shall have power to remove members of the board for cause, and section 8, providing how vacancies shall be filled by the mayor, constitute an elective scheme which will include all cities of the first

class. But it is insisted that the language of section 5 must be regarded, and that it is referable alone to existing cities of the first class. Assuming this to be so, the question remains whether it is such an integral part of the scheme that it cannot be excluded without destroying the plan. The section deals only with the matter of detail, namely, the form in which the ballots to be used were to be printed. It is manifest that without this section the election could be and would be carried on in substantially the manner provided for by the section. If the supplement had been passed without the fifth section, no one would doubt that a practicable method of electing the members of the board was enacted. The force of section 5 is limited to an ascertainment of the intention of the legislature in enacting section 4. If it is obvious that the legislature did not intend that any part of a statute should have effect unless the void part should operate, then the void part invalidates the whole. The vicious part must be distinct and separable, and, when stricken out, enough must remain to be a complete act, capable of being carried into effect, and sufficient to accomplish the object of the law as passed in accordance with the intention of the legislature. *Suth. Stat.*, § 169; *Allen* v. *Louisiana*, 103 *U. S.* 80; *People* v. *Porter*, 90 *N. Y.* 68. A grant of power to pave streets was sustained, although coupled with a void provision that the costs should be assessed upon abutting owners. *State* v. *Elizabeth*, 11 *Vroom* 278. A clause providing for a penalty is good, although the manner provided for recovering a penalty is bad. *Campbell* v. *Board of Pharmacy*, 16 *Id.* 241. An act authorizing a municipal corporation to pass ordinances to compel railroad companies to protect grade crossings, which act contains a proviso for a judicial review of the ordinance, is good as an authority to pass ordinances, although the method of review is void. *McCullough* v. *Franklin*, 30 *Id.* 106. Other instances in which unconstitutional clauses have been excised, and the rest of the act saved, are exhibited in *Rader* v. *Township of Union*, 10 *Id.* 509; *Evernham* v. *Hulit*, 16 *Id.* 53; *Golden Star Fraternity* v. *Martin*, 30 *Id.* 207, 213. Now, as already observed, the purpose

of section 5 is only incidental to the main purpose displayed by section 4. Doubtless the draftsman of section 5 did not have in mind the future cities of the class, but this mental mood is quite different from an intention that no part of the statute should apply to such cities if section 5 did not. Adopting the language of Judge Finch, in the matter of *Village of Middletown,* 82 *N. Y.* 196, 204, "no one can doubt that, if the attention of the legislature had been drawn to its lack of power to enact the provision objected to, it would, nevertheless, have passed the act without the unconstitutional provision. It was a mere error of detail, which did not enter into or form an essential part of the statute." We are of the opinion that the fifth section is a separable part of the act. It is to be observed that section 24, page 268, of the act of 1901, provides that an unconstitutional clause or section shall not affect any other section or provision. Whether this section is more than a mere affirmation of a general legal rule of statutory construction need not be discussed, but it at least shows that the legislature had in mind the existence of this rule.

The conclusion thus reached is based upon the assumption that section 4 applies to all cities of the first class, but it may be further inquired, respecting section 5, whether it exhibits an intention that section 4 shall not apply to all cities of the first class. There can be no doubt that the language of a void section may be used to ascertain the meaning of any other part of the statute. There is, however, no express language in section 5 which limits or modifies the language of any other section. If any intention to limit the operation of section 4 can be found in section 5, it must arise by implication. The implication must spring from the presumption that in section 5 the legislature intended to provide for all elections to be held under the act, and therefore, inasmuch as it did not in that section make provision for any election to be held in future cities of the class, it must have intended that no such election should be held. The conclusion to be drawn from this implication, it could be argued, is that, in using the words "next charter election" in section 4, the

legislature meant the next election to be held in existing cities only. But it is not on slight implication and vague conjectures that the legislature is to be pronounced to have transcended its powers and its acts to be considered as void. *Cooley Const. Lim.* 183. The duty of the judicial department is to assume that the legislature intended to act within its power, and only where it is entirely clear that it has failed to do so should its work be declared a nullity. The assumption is that the legislature, in section 4, intended to make a constitutional provision for elections in cities of the first class, and the language used being capable of a construction which conforms with such intention, its presumed purpose should not be defeated by an implication of a different intention.

Having reached the conclusion that the provision for a permanent elective system under which the plaintiffs in error were elected is constitutional, we might, I think, stop, for unless it is clear that the legislature would not have passed the section providing for the permanent change if it had known that the provision for temporary appointments was void, the latter can be regarded as a separable incident of the scheme. Assuming that section 2 (providing for an appointment), section 3 . (defining the powers of the appointed board) and section 6 (providing for the organization of such board) are unconstitutional, yet, as the board were to exist only until an election could be held, it is clear that the appointive was a mere appendage of the primary elective scheme. Had an intention appeared to unnecessarily prolong the appointive period, and so, under color of its being an incidental feature, the legislature had made it a substantial feature of the legislation, it would have presented a very different aspect. The appointive feature was, in my judgment, a separable part of the legislation. This view is strengthened by a glance at the situation existing when the appointive sections are swept away. The original act in the first section provided that the mayor should appoint five persons as members of the board, and that he should fill vacancies. When the terms of the members of the board were

ended by section 1 of the supplement, and no method for filling their places until an election existed, the mayor, under the original act, could fill the vacancies. The terms of his appointees would expire, by force of the supplement, when a new board was elected. Thus it is perceived that the law, of which the legislature is presumed to have been informed, left the affairs in about the same shape, whether the appointments were made under the original or under the supplemental statute. This view seems to add to the force of the supposition that the legislature could not have regarded the appointive branch of the legislation as so important that, without it, it would not have enacted the elective plan.

This results in a reversal of the judgment of the Supreme Court.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DIXON, GARRISON, FORT, SWAYZE, REED, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, J.J. 11.