THOMAS H. GERATY et al., Respondents, *v.* PHILIP H. REID, Appellant.

As the State constitution (art. 6, § 18) provides specifically for the election of justices of the peace in the towns of the State, the Legislature cannot create that office and provide for an election in a different manner than therein provided, or by any other locality.

Under the provision of the act of 1849, in relation to courts in the city of Brooklyn (§ 15, chap. 125, Laws of 1849), providing for the election of justices of the peace, "who shall have the same jurisdiction *in said city* that justices in towns have by law," in respect to the towns, the jurisdiction of said officers is restricted to the limits of the city.

The general language of the act of 1850 (§ 16, chap. 102, Laws of 1850), giving to said justices, in addition to the jurisdiction given by the former act, "the like jurisdiction in all civil cases as is now exercised by the justices of the peace of the towns," does not impair the force of such restriction, but refers only to the powers and jurisdiction which may be exercised within the city.

Accordingly *held*, that a justice of the peace of said city had no power to send process into adjoining towns for service ; and that he acquired no jurisdiction by the service of a summons outside of the city limits.

(Argued June 4, 1879 ; decided September 16, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, reversing

a judgment of the County Court of Kings county, which reversed a judgment of a justice of the peace of the city of Brooklyn; and affirming the judgment of said justice.

The summons in the action was served upon the defendant in the town of New Lots, outside of the city of Brooklyn. Defendant appeared and pleaded to the jurisdiction. The justice overruled the plea and gave judgment for plaintiffs.

*Frank Crooke*, for appellant. The jurisdiction of the justice was confined to the city limits by section 35 of chapter 125 of Laws of 1849. (*Waters* v. *Langdon*, 40 Barb., 408; *Brandon* v. *Avery*, 22 N. Y., 469; *Sill* v. *Corning*, 15 id., 297, 307.)

*John F. Baker*, for respondents. The justices of the peace of the city of Brooklyn having the same power as justices of the peace of towns, have the right to send their processes to be served into any adjoining town in the same county. (Laws 1849, chap. 125, § 35; *Cooper* v. *Ball*, 14 How., 396; Benedict's N. Y. Civil and Crim. Justice [5th ed.], 7–25; McCall's Civil Justice, 35; *Gurnsey* v. *Lovell*, 9 Wend., 319; *Waters* v. *Langdon*, 40 Barb., 414; R. S. [5th ed.], § 12, p. 102; *Houghtailing* v. *Groesbeck*, 51 N. Y., 673.) The law conferring such jurisdiction was constitutional. (Amendment to Const. of 1846 in 1869, § 17; *Roosevelt* v. *Godard*, 52 Barb., 533; *People* v. *Huntington*, 4 N. Y. Leg. Obs., 187; *In re Oliver*, 21 N. Y., 9.)

CHURCH, Ch. J. The question involved in this case is whether the justice's court of Brooklyn could have its process served outside of the city. It is claimed that justices of the city had the same authority as justices of the peace elected in towns to send process into an adjoining town. The court was organized under the Laws of 1849, chapter 125, section 15, by which it is provided that the common council of the city of Brooklyn may divide the said city into two or more districts, for each of which districts a justice of

.the peace shall be elected for four years, "who shall have the same jurisdiction *in said city* that justices of towns have by law in respect to the towns for which they have been elected, and they shall be deemed justices of the peace of the county of Kings."

The jurisdiction of these courts was specified, and by the act of 1850, chapter 102, section 16, it was provided that "the said justices except police justices shall have the like jurisdiction in all civil cases, as is now exercised by the justices of the peace of the towns in this State in addition to the powers and jurisdiction given *by* them under the said act hereby amended."

The constitution of 1846 provided specifically for the election of justices of the peace in the several towns of the State, and hence it was not competent for the Legislature to create that office and provide for an election in a different manner, or by any other locality. The implied prohibition is as effectual as if it had been expressed. The constitutional authority for creating inferior courts was provided by the following clause: "Inferior local courts, of civil and criminal jurisdiction, may be established by the Legislature, in cities." It was afterwards held by a divided court that local justices of the peace might be created in villages, and that civil jurisdiction might be conferred upon them. (*Sill* v. *Village of Corning*, 15 N. Y., 297.)

The question was again passed upon in *Brandon* v. *Avery* (22 N. Y., 469), in respect to the jurisdiction of the police justice of the village of Ilion. The cause of action arose in another town, but was transitory. It did not appear where the process was served, but on the return day the parties appeared, and put in their pleadings without objection. The charter of Ilion provided for the election of a police justice who "shall in said village possess all the jurisdiction, power and authority, and be subject to the same requirements and duties in all respects as is, or may by law be vested in, or required from justices of the peace of the town of German Flats."

This court held that the territorial restriction "in said village," confined the jurisdiction to the limits of the village, and sufficiently marked the distinction between that office, and justices of the peace of towns, and saved the act from being condemned as unconstitutional. The court assumed that the police justice could not send his process beyond the village limits.

In *Waters* v. *Langdon* (40 Barb., 408), involving the jurisdiction of a police justice in the village of Whitesboro, the act was held unconstitutional upon the ground that it was in effect an attempt to create an additional justice of the peace for the town of Whitestown, and the case is distinguished from *Brandon* v. *Avery* (*supra*), because there were no words in the act limiting the jurisdiction territorially, as in the latter case. Under these authorities it appears to us that the proper construction of the acts referred to is that the words "in said city" were intended to restrict the exercise of the jurisdiction of the officers in question to the limits of the city, and that the general language of the act of 1850, conferring additional jurisdiction does not impair the force of this restriction, but refers only to the power and jurisdiction which might be exercised within the city. This view is confirmed by the consideration that the other construction would render the act invalid. It is well settled that between two constructions, that one is to prevail which will uphold a statute, rather than that which will condemn it.

The only authority conferred is to establish *local* and inferior courts. The jurisdiction of a *local* court must be exercised within the locality, and its process cannot be executed outside of it. Whatever power constitutional justices of the peace may possess to send their process into adjoining towns, no *local* court created under the clause referred to, could be vested with that power, and we think that the Legislature did not intend by these acts to violate the constitution.

It is therefore unnecessary to consider the additional question, what effect the amended constitution of 1869 would

have upon the provisions, referred to, in the acts of 1849 and 1850, if they were unconstitutional at the time they were passed.

The judgment of the General.Term must be reversed, and that of the county court affirmed.

All concur.

Judgment accordingly.