In the Matter of the Application of the City of Buffalo to Acquire Lands and Property for Park Purposes, Pursuant to Chapter 557 of the Laws of 1887.

The right to appropriate private property to public uses under the power of eminent domain is subject to certain limitations imposed by the State Constitution, restricting the power of the legislature, which secure to the property holder the right to have all questions which are referred to a tribunal determined by one possessing vested jurisdiction over him and his estate.

The power to select or locate the lands may be delegated, but the proceedings for determining the question of just compensation are judicial in their nature and must be conducted in a court having jurisdiction over the subject-matter.

Where, therefore, property outside of a city is sought to be condemned for municipal purposes, the legislature has no power to delegate the determination of the question as to compensation to a local court possessing no extra-territorial jurisdiction.

The provision of the State Constitution, as amended in 1869 (Art. 6, § 12), continuing the Superior Court of Buffalo and certain other local courts, with the powers and jurisdiction they then severally had, "and such further civil and criminal jurisdiction as may be conferred by law," does not give, or authorize the legislature to confer, jurisdiction upon said Superior Court over the owner of lands situate outside of the city limits.

Accordingly *held,* that the provisions of the act of 1887 (Chap. 557, Laws of 1887), authorizing the park commissioners of the city of Buffalo to select and locate lands for park purposes, so far as they authorized said commissioners to apply to said Superior Court for the appointment of commissioners to appraise the value of lands so selected outside of the city limits belonging to a non-resident, were inoperative and void; and so, that an order of said court appointing commissioners in such case was void.

*In re Church* (92 N. Y. 1); *In re Mayor, etc.* (99 id. 569), distinguished.

(Submitted June 29, 1893; decided October 10, 1893.)

APPEAL from order of the General Term of the Superior Court of the city of Buffalo, made June 13, 1892, which reversed an order of Special Term confirming the report of commissioners of appraisal in proceedings by the city of Buffalo to condemn lands for park purposes, under the act of 1887 (Chap. 557).

The facts, so far as material, are stated in the opinion.

*George M. Browne* for appellant. The act under which this proceeding was instituted is constitutional. (Const. N. Y. art. 1, §§ 6, 7; *People* v. *Smith,* 21 N. Y. 598; *In re Fowler,* 53 id. 60; *In re Townsend,* 39 id. 171; *B. P. Co.* v. *Armstrong,* 45 id. 244; *In re U. E. R. Co.,* 112 id. 74; *In re U. F. Co.,* 98 id. 139; *In re Mayor, etc.,* 34 Hun, 443; *In re Mayor, etc.,* 99 N. Y. 571; *Eldridge* v. *City of Binghamton,* 120 id. 309; *Livingston* v. *Mayor, etc.,* 8 Wend. 102; *Stuart* v. *Palmer,* 74 N. Y. 183; Mills on Em. Domain, chaps. 1, 2; Dillon on Mun. Corp. [4th ed.] chap. 16; Const. N. Y. art. 6, § 12; *In re Comrs. of Central Park,* 50 N. Y. 495, 496.) Chapter 557 of the Laws of 1887 was not

repealed by chapter 95 of the Laws of 1890, entitled " An act to amend the Code of Civil Procedure," as amended by chapter 247 of the Laws of 1890, and being chapter 23 of the Code, section 3383. (*People* v. *Bd. Suprs.*, 103 N. Y. 541; *Lyddy* v. *Long Island City*, 104 id. 218; *B. C. Assn.* v. *City of Buffalo*, 43 Hun, 127; 118 N. Y. 61; *Wiler* v. *Nembach*, 114 id. 36.) The court at General Term erroneously held that chapter 557 of the Laws of 1887 was in conflict with section 16 of article 1 of the Constitution, which provides that no local or private bill which may be passed by the legislature shall embrace more than one subject, and that that shall be expressed in the title. (*Monle* v. *M. & B. P. R. R. Co.*, 6 How. Pr. 39; *In re Mayor, etc.*, 99 N. Y. 576; *In re Paul*, 94 id. 496; *Astor* v. *A. R. Co.*, 113 id. 93, 110; *Sweet* v. *City of Syracuse*, 129 id. 316; *Van Brunt* v. *Town of Flatbush*, 128 id. 54; *People ex rel.* v. *Briggs*, 50 id. 553; *W. I. B. Co.* v. *Town of Attica*, 119 id. 210; *In re Knaust*, 101 id. 188; *In re Mayor, etc.*, 50 id. 504; *Mayor, etc.*, v. *Colgate*, 12 id. 146; *S. M. Ins. Co.* v. *Mayor, etc.*, 8 id. 241; *Connor* v. *Mayor, etc.*, 5 id. 285.)

*John Cuneen* for respondent. The act of 1887, so far as it prescribed the course of procedure, was repealed by chapter 95 of the Laws of 1890, as amended by chapter 247 of the Laws of 1890, and for this reason the court has no jurisdiction of this proceeding. (Laws of 1890, chap. 247; Code Civ. Pro. § 3384.) The act which attempted to confer upon the Superior Court of Buffalo jurisdiction to determine the compensation to be made for taking lands beyond the limits of its jurisdiction was void. (Const. N. Y. art. 1, §§ 6, 7; *Clark* v. *City of Utica*, 18 Barb. 451; *Menges* v. *City of Albany*, 56 N. Y. 374; *People ex rel.* v. *Porter*, 90 id. 68; *Kundolph* v. *Talheimer*, 12 id. 593; *Gilbert* v. *York*, 111 id. 544; *Geraty* v. *Reed*, 78 id. 64; *Hoag* v. *Lamont*, 60 id. 96; *Rockwell* v. *Raymond*, 5 N. Y. Supp. 642; *Landers* v. *S. I. R. R. Co.*, 53 N. Y. 450; *In re N. F. & N. R. R. Co.*, 121 id. 319; *In re E. B. N. & M. Co.*, 96 id. 42; *Kohl* v. *U. S.*,

91 U. S. 367; *C. M. R. R. Co.* v. *Jones,* 29 Fed. Rep. 195; *Boom Co.* v. *Paterson,* 98 U. S. 406; *Banigan* v. *City of Worcester,* 30 Fed. Rep. 392; *Searl* v. *School Dist. No.* 2, 124 U. S. 197; *Striker* v. *Kelly,* 2 Den. 323; 36 N. Y. 182; 64 id. 60; 40 How. Pr. 335; 46 Hun, 534.) The act of 1887 is violative of section 16 of article III of the Constitution, and, therefore, void. (Laws of 1870, chap. 519, § 8.)

GRAY, J. This is an appeal from an order of the General Term of the Superior Court of Buffalo; which reversed an order of the Special Term, confirming the reports of commissioners in proceedings by the city of Buffalo to ascertain the compensation to be paid to the owners of lands within that city and the town of West Seneca, appropriated for park purposes; pursuant to chapter 557 of the Laws of 1887.

This respondent, Wasson, was a resident of the town of West Seneca, and, when the motion for the confirmation came on to be heard, he objected that the court was without jurisdiction. He says that the act of the legislature could not confer jurisdiction upon the Superior Court to determine the compensation to be made for taking land situate without the limits of the city of Buffalo.

In deciding the question thus raised, we must consider what were the provisions of the act, and whether, in attempting to vest in the Superior Court the power or jurisdiction to entertain the proceedings for the ascertainment of the compensation to be made to owners of lands outside of the city, the legislature was without authority, under the Constitution, to do so. By the first section of chapter 557 of the Laws of 1887, the park commissioners of the city of Buffalo were authorized to select and locate such grounds in the thirteenth ward of the city, and in the town of West Seneca, adjoining that city, as might be, in their opinion, proper and desirable to be reserved for one or more public parks, and to locate and lay approaches thereto and streets connecting with the existing system of public parks. The second section provided that, before the lands shall be taken, the common council of the

city shall, by resolution, declare that the city has determined to appropriate the said lands for the purposes aforesaid. The same section provides for a notice to be published by the city of an application to the Superior Court of Buffalo for the appointment of three commissioners, to ascertain and report the just compensation to be paid to any person owning or having an interest in the property. Subsequent provisions of the act prescribe the proceedings to be taken by the commissioners and such as should be had in the court named, upon the filing of their report; with respect to its confirmation, to the persons to whom the compensation is to be paid, and to cases where, there being adverse claimants to the moneys, a determination of their rights is to be made by the court.

The Superior Court of the city, upon which the act thus attempted to confer the jurisdiction to entertain these proceedings and to hear and determine the various questions which might arise, either upon the coming in of the commissioners' report, or because of what had been done in the matter, was originally created as a local court of record, the jurisdiction of which was confined to the determination of "local actions arising in said city and not elsewhere." When first created by the legislature in 1839, it was as a court of civil jurisdiction, to be called the "Recorder's Court of the city of Buffalo."

The Constitution of 1846 defined the powers and jurisdiction of the several courts, and confirmed and continued all local courts established in any city and village, in the powers and jurisdictions then possessed by them. In 1854 the legislature changed the name of this court to the "Superior Court of Buffalo" and enlarged its jurisdiction so as to include, among others, actions or proceedings for the recovery of real property, or which affected any rights or interest therein, provided the cause of action arose. or the subject thereof was situate in the city of Buffalo.

In 1869, by an amendment of the judiciary article of the Constitution, the Superior Court of Buffalo and the local courts in the State were continued "with the powers and jurisdiction they then severally had and such further civil and

criminal jurisdiction as may be conferred by law." There was subsequent legislation respecting this court, but none which it becomes necessary to notice here. What has been described is sufficient for the questions to be discussed. It is certain that, outside of the act in question, under which the lands were appropriated, there can be found no law warranting the Superior Court of Buffalo in entertaining jurisdiction over the owner of lands situate outside of the limits of the city of Buffalo. Its jurisdiction was local and confined to the territorial limits of the city. If jurisdiction has been conferred upon it by the act of 1887, to entertain these proceedings and to determine all questions which may arise in their progress, then the exercise by the legislature of such a power must find its warrant, either in the proposition that the appropriation and condemnation of lands for this public use were purely and continuously a legislative proceeding, for the conduct of which power was delegated to the court named, acting therein not judicially, but exercising, in a supervisory way, control over the legislative proceeding; or, otherwise, the proposition must be established that the power of the legislature to vest this extra-territorial jurisdiction in the court named, so as to extend it to and over the owners of lands outside of the city limits, was one which the constitutional amendment of 1869 authorized, when it continued local courts in the jurisdiction then possessed and "*such further civil and criminal jurisdiction as may be conferred by law.*"

The latter proposition may first be dismissed as untenable. It was really involved and decided in the decision of the case of *Landers* v. *Staten Island R. R. Co.* (53 N. Y. 450). It had been argued there that the legislature was authorized to enlarge the jurisdiction of the City Court of Brooklyn, one of the local courts mentioned in the Constitution, so as to permit its process to extend beyond the city limits, or throughout the state; but this court held that the terms, in which the authority for enlarging the jurisdiction of the court was given, did not imply an authority to confer jurisdiction either of subjects, or causes of action, or persons, outside of the bound-

ary lines of the city of Brooklyn, or in any respect to make it aught else than a local court as it was originally organized and as it was continued upon the adoption of the amended judiciary article. It was said that "the terms 'civil' and 'criminal,' when used in reference to jurisdiction, or judicial proceedings generally, had respect to the nature and form of the remedy and the cause of action, or occasion for instituting legal proceedings;" and, again, that "when the Constitution speaks of further civil and criminal jurisdiction, it has respect to the object of the jurisdiction and not to the territory or persons of suitors." The opinion, delivered by Judge Allen, very elaborately discussed the question of the power of the legislature to confer jurisdiction upon the constitutional local courts over causes of action originating outside of the territorial limits of the tribunal, and decided it adversely to that contention. Its reasoning is sufficient to dispose of the proposition here.

It is rather upon the first proposition that, as I understand his opinion, the learned judge at Special Term has rested his decision. It was his opinion that the power exercised by the court was not judicial, but administrative; that there was no cause of action to adjudicate upon and no judicial proceeding was involved. He held that the court takes no property by force of the exercise of judicial power, and determines no right with respect to such taking, but exercises a "supervisory control of a proceeding instituted by the sovereign power," and performs such duties as are incidental to the taking. He holds that the court is not required to act judicially with respect to the proceedings called for by the act; and he also suggests that, if the judicial power be invoked, nevertheless, as the power was to be exercised in the process of a resumption of the possession of lands for public uses by the People, through its representatives in the legislature, it might be competently exercised *pro tanto*. The learned judge, apparently not looking beyond the aspect of the whole matter as one for the taking of lands for public purposes, by the right of eminent domain, considers the successive steps, following upon the selection by the city

and required to consummate the taking, as but parts of the legislative action, and the court, designated in the act, as acting incidentally in the matter, as the mere hand, or administrator, of the sovereign power. We are unable to agree with him in his view. The difficulty with it is that it incorrectly defines the legislative action. What the legislative body has done is to delegate the power to take lands to certain municipal officers, and to direct them to bring the proceedings for condemnation in a court; where, as between the city and the landowners, the latter may have their day for the hearing of their objections. The lands may be regarded as appropriated to the public use described, when the officers, vested with the power to select them, have performed that duty ; but it is readily conceivable that questions, other than such as relate to the regularity of procedure, may arise touching the validity and the mode of the exercise of the power, or the rights of individuals, which the tribunal must pass upon with judicial force. The power of the tribunal, in such respects, must necessarily be independent and exercised judicially. The exercise of the undoubted right to appropriate private property to public uses, under that power of eminent domain which resides in the legislature, as representing the People of the state, is subject to certain limitations, imposed by the Constitution and restricting the powers of the legislative body, and which operate to secure to the property owner the right to have all questions, which are referred to a tribunal, determined by a tribunal which is competent, as possessing the vested jurisdiction over him and his estate. The power to select, or to locate the lands to be used, may be delegated ; but the proceedings, which are instituted thereupon in a court, for the purpose of determining the question of just compensation, and for carrying into effect the legislative provisions, must be conducted in a court, the jurisdiction of which extends over the subject-matter. The requirements of the Constitution, that no person shall be deprived of property without due process of law, and that no private property shall be taken for public use without just compensation, mean and exact that the proceedings to determine

the just compensation to be paid to landowners shall be in a court of competent jurisdiction; whose process, reaching to the person, brings him into a forum where the question of compensation shall be duly adjudged. To delegate that determination to a local court, possessing no extra-territorial jurisdiction, in the case of non-residents, was an unauthorized act. It devolved upon it duties which were plainly judicial in their nature, and of a scope involving more than mere ministerial or administrative action. The Constitution provides that the just compensation for the taking of private property is to be made "by a jury, or by not less than three commissioners appointed by a court of record." It as obviously intended that the court of record shall be one of competent jurisdiction, as that, if the' act had provided the determination should be by a jury, the jury should be a body composed as such bodies usually are by law.

If the legislature requires the resort to the agency of a court of record, to determine the compensation to be made in the case of the taking of lands, it must designate a court which, with respect to the subject-matter and persons, is competent, as possessing lawful jurisdiction over them. That is the natural and proper sense in which the constitutional requirement as to a court of record should be read.

The difference of views in this case has arisen in the failure to observe the distinction between the exercise of the legislative power, in the appropriation of the lands to a public use, and the proceedings which are taken subsequently, for the purpose of making compensation. There is no question about the power of the legislature to authorize such an appropriation, and to prescribe the manner in which the selection or location of lands may be made; but, for the determination of all questions as to which the owners have a right to be heard, it is a constitutional and, therefore, a fundamental requirement, that they shall be remitted to a court within the jurisdiction of which they and their properties are. That the proceedings in question are judicial in their nature, is a question about which we entertain no doubt. The questions which might be

raised for determination, whether relating to the constitutionality of the act itself, or to the procedure prescribed, or to the value of the land and the award of compensation, its amount, and to whom due, are such as are of judicial cognizance.

In the brief of the respondent's counsel, cases are cited to establish that proposition, which need not be particularly referred to here. In *Monongahela Navigation Co.* v. *United States* (148 U. S. at p. 327), it was very recently held by the United States Supreme Court, with respect to certain legislation determining the measure of the compensation, that " the legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character; but when the taking has been ordered, then the question of compensation is judicial. The Constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry."

In Dillon on Municipal Corporations (§ 619), the same view is taken. It is the correct and sound view. When the legislature has authorized an appropriation of private property for public purposes and remits the matter of compensation to the court, it intends that a proceeding judicial in its nature shall be set on foot, in which every question may be raised by the landowner, and there and then determined, which affects his rights.

What is the reason for requiring a notice to be given of the application to the court for a confirmation of the commissioners' report, except that thereby an opportunity is afforded for parties interested in the matter to appear and to be heard in objection, before a tribunal which has been vested with authority to determine and to adjudge upon the questions and issues raised by their objections? Any other view tends to a subversion of the constitutional rights of the landowner and deserves no encouragement from the courts.

The conclusion we have reached is that, for the reasons stated, as to this respondent, chapter 557 of the Laws of 1887 was inoperative and void.

We have not overlooked the cases of the *Matter of Church*

(92 N. Y. 1) and of the *Matter of Mayor of New York*
(99 id. 569), referred to by the learned judge at Special
Term. In the first case the present question was not decided
and the second case is not in point; inasmuch as the tribunal
there appointing the commissioners was a court of general
jurisdiction, possessing power and authority competent for
the purpose.

The order of the General Term should be affirmed, with
costs.

All concur.

Order affirmed.