Louis C. Ziegler, Respondent, *v.* Melissa Corwin, Appellant.*

*The Municipal Court of Rochester has no civil jurisdiction beyond the city limits — constitutional provisions relative to inferior local courts — their jurisdiction.*

The provisions of section 3226 of the Code of Civil Procedure, declaring that the Municipal Court of the city of Rochester is to be deemed a Justice's Court; that each judge thereof is to be deemed a justice of the peace, and that the city of Rochester is to be deemed a town of Monroe county, thereby carrying the civil jurisdiction of that court into that portion of Monroe county which lies outside of the city of Rochester, are unconstitutional.

The provisions of section 18, article 6 of the Constitution of the State of New York, clearly provide for the election of two classes of justices of the peace, one of which is to act for the towns and the other for the cities, and the attempt to blend these two classes of offices, made in section 3226 of the Code of Civil Procedure, cannot prevail.

If a justice of the peace is elected by a city he is a city officer, and the Legislature can provide the method of his election and fix his term of office, but if he is a justice of the peace of a town, he is a town officer, whose method of election and term of office is fixed by the provisions of section 18 of article 6 of the State Constitution.

Section 29 of chapter 561 of the Laws of 1890, which confers upon the "Municipal Court of the city of Rochester, * * * jurisdiction and powers to have any and all process or papers issued by the clerk, deputy clerk or one of the judges executed and served *anywhere within the county of Monroe,* and all

---

* See *Baird* v. *Helfer* (*ante*, p. 23).

process and papers issued may be directed to or served by any constable of any ward within said city or any town within said county," is unconstitutional and void.

Such section finds no support in section 19 of article 6 of the Constitution, created by the amendment of 1869, as that section of the Constitution deals with "inferior local courts of civil and criminal jurisdiction," and was not intended to override the provisions of section 18 of article 6 as enacted in 1846, providing for the manner of the election of justices of the peace of towns.

The jurisdiction of these inferior or local courts is limited to causes of action arising within the territorial limits of the tribunal, or to cases in which the parties proceeded against reside in, or are served with process within the jurisdiction.

The denial of jurisdiction to the Municipal Court of Rochester beyond the limits of the city does not destroy the existence of that court nor disturb its jurisdiction in the city of Rochester, but merely relegates to the towns of Monroe county their appropriate and natural jurisdiction.

The judiciary of the State will not nullify the acts of the Legislature unless the plain violation of the letter or spirit of the State Constitution is apparent.

APPEAL by the defendant, Melissa Corwin, from an order of the County Court of the county of Monroe, entered in the office of the clerk of the county of Monroe on the 17th day of June, 1896, denying her motion to set aside an order in supplementary proceedings and to vacate a judgment of the County Court of Monroe county on the ground that the court below (the Municipal Court of the city of Rochester) never acquired jurisdiction of the action.

*Clarence W. McKay*, for the appellant.

*L. E. Hulburt*, for the respondent.

WARD, J.:

In March, 1896, the plaintiff (the respondent here) commenced an action in the Municipal Court of the city of Rochester and presented a verified complaint against Melissa Corwin and another defendant, claiming judgment for $200, with interest from December 4, 1895, upon a promissory note executed by the defendants. Such proceedings were had that the plaintiff obtained judgment upon the note in the Municipal Court, from which a transcript was obtained and filed in the clerk's office of Monroe county and proceedings supplementary to execution were instituted for the examination of the defendant Melissa Corwin (the appellant here) concerning her property. She appeared specially on the twenty-fourth

day of April before the referee appointed to take her testimony in supplementary proceedings and objected to the jurisdiction of her person for the reason that the Municipal Court had no jurisdiction over her for two reasons: *First,* that she was not served with a summons in the action. *Second,* that the summons was served upon her in the town of Penfield, a town in Monroe county outside of the city of Rochester, and that the Municipal Court of Rochester did not thereby acquire jurisdiction of her person. These objections were overruled, and thereafter she obtained an order to show cause from the special county judge of Monroe county, upon affidavits presenting the facts, why an order should not be granted setting aside the judgment in the action on the ground that the court below had no jurisdiction over her person.

The special county judge denied this motion, with ten dollars costs, and from this order an appeal was taken to this court, and the questions before us are indicated in the foregoing statement.

The appellant here did not appear in the Municipal Court. Judgment was rendered against her by default and she has in no manner waived the question of jurisdiction which she here presents.

The first point raised, that the summons was not served upon the appellant, is not tenable. The affidavits disclose fairly that such service was made upon her, notwithstanding her positive denial that it had been made.

The serious question arises as to the second ground of appeal, that the Municipal Court obtained no jurisdiction of the appellant; that it was a local city court; that its jurisdiction did not extend beyond the city of Rochester as to the person of the appellant, and that the process of that court could not be served upon the appellant outside of the city.

The Municipal Court of Rochester was created by chapter 196 of the Laws of 1876, and section 1 provides: "A court of civil jurisdiction, to be called and known as the ' Municipal Court of the city of Rochester,' is hereby created and established *in and for said city* with the jurisdiction and powers hereinafter provided."

This statute further directs the appointment, by the Governor, of two judges of the Municipal Court, one of whom shall hold his office for the term of five years and the other for the term of six years, and provides that at an annual charter election to be held in

the city next preceding the close of each of said terms of office said office shall be filled by election, and that the person so elected shall hold the office for the term of six years. Jurisdiction was conferred upon this court in certain matters, and section 16 of the act provided that, after the passage of the act, no person should be elected to the office of justice of the peace of the said city, and that all acts and parts of acts inconsistent with the act in question, and all provisions of the charter of the city of Rochester in relation to the Justices' Courts of said city inconsistent with it, were thereby repealed.

By chapter 561 of the Laws of 1890, section 29, being an amendment of section 241 of chapter 14 of the Laws of 1880, being an act to amend and consolidate the several acts relating to the charter of the city of Rochester, it is provided that : " A court of civil jurisdiction, to be known as the ' Municipal Court of the city of Rochester,' is continued and established in and for said city, with the jurisdiction and powers hereinafter provided, and the further jurisdiction and powers to have any and all process or papers issued by the clerk, deputy clerk or one of the judges executed and served *anywhere within the county of Monroe,* and all process and papers issued may be directed to and served by any constable of any ward within said city, or any town within said county."

By chapter 143 of the Laws of 1861 three justices of the peace in the city of Rochester could be elected by the legal voters of the city ; and section 237 provided : " The justices of the peace in the said city exercising civil jurisdiction shall be deemed justices of the peace of the county of Monroe, and the general laws of this State in relation to process, pleadings and proceedings by and before justices of the peace of the several towns of this State and in relation to judgments rendered by them and the methods of enforcing the same and appeals therefrom, shall be applicable to such justices of the peace, and to all judgments by them rendered."

The General Term of the old fourth department, in *Dawson* v. *Horan* (51 Barb. 459) and in *The People ex rel. White* v. *Common Council of the City of Rochester* (11 Hun, 241), held that justices of the peace of the city of Rochester whose election was provided for in chapter 143 of the Laws of 1861 were not justices of the peace within the meaning of that term as used by the Con-

stitution, and that the courts held by them were courts of inferior jurisdiction within the meaning of section 19, article 6 of the Constitution, as it existed prior to January 1, 1895, and that these justices were city officers and not town officers.

In *People* v. *Upson* (79 Hun, 87) the General Term of the fifth department held that chapter 384 of the Laws of 1887, which provided that the Court of Special Sessions held by the police justice of the city of Rochester should have, " in the first instance, exclusive jurisdiction to hear, try and determine all charges of misdemeanors committed within the county of Monroe," etc., was unconstitutional because it assumed to give to the police justice of Rochester a territorial jurisdiction throughout the county of Monroe. Judge DWIGHT, in pronouncing the opinion in that case, says: " The office in question finds its only warrant for being, in that provision of the Constitution of the State which provides for the establishment by the Legislature of 'inferior local courts of civil and criminal jurisdiction.'" The meaning of the term " local courts " is well established by the authorities. It means courts possessing a jurisdiction localized within the territorial limits of the city or village for which each is created, and by the electors of which its incumbent is chosen. Such is the plain doctrine of such cases as *Brandon* v. *Avery* (22 N. Y. 469); *Waters* v. *Langdon* (40 Barb. 408); *Geraty* v. *Reid* (78 N. Y. 64); *People ex rel. Sinkler* v. *Terry* (108 id. 1); *Curtin* v. *Barton* (139 id. 505).

In the two cases last cited the constitutionality of the enactments assailed was upheld only because, by a just construction of their terms, it was apparent that the jurisdiction of the courts created thereby was intended to be limited in the one case to the city of Syracuse and in the other to the village of Canton, in which these courts were respectively constituted.

To this history of the legislation and the decisions affecting the subject of the jurisdiction of the Municipal Court of Rochester and of the justices of the peace of that city should be added the provisions of section 3226 of the Code of Civil Procedure, which were in force during the period covered by the litigation in the case at bar and are as follows: " The provisions of chapter nineteenth of this act (being the chapter relating to courts of justices of the peace and proceedings therein), excluding titles tenth and eleventh

thereof, apply to the Municipal Court of the city of Rochester and to the judges thereof, except so far as they are inconsistent with the next section, or with any other special provision of statute remaining unrepealed after this chapter takes effect. For the purpose of applying the same, the court is deemed a Justice's Court; each judge thereof is deemed a justice of the peace, and the city of Rochester is deemed a town of Monroe county." "The next section," above referred to, does not affect the question we are considering.

It is easily perceived from the above statement that the effort of the Legislature has been to confer upon the local courts of Rochester jurisdiction over the people of Monroe county outside of the city in both civil and criminal matters.

In *The People* v. *Upson* (*supra*), as we have seen, the jurisdiction of the Police Court in criminal matters outside of the city was denied. The question remains whether the legislative command carrying the jurisdiction in civil matters into that portion of Monroe county which lies outside of the city of Rochester can be upheld.

The judiciary of the State will not nullify the acts of the Legislature unless the plain violation of the letter or the spirit of the State Constitution is apparent. The Legislature is primarily the judge of the validity of its own acts, as is asserted in many cases, and courts will not overrule that judgment unless a plain duty exists to preserve the integrity of the Constitution itself; but when that duty is apparent the courts do not hesitate to meet the responsibility. It may be admitted that there is nothing in the Constitution, in terms, absolutely forbidding the exercise of the legislative power which is here challenged. But was it not a violation of the intent and plan of the Constitution in the organization and operation of the courts of this State? A statute which is opposed to the spirit and purpose of the Constitution is as much within the condemnation of the organic law as though the intention to violate the Constitution were written in bold characters upon the face of the statute itself. The question we are considering has in substance been before the courts of this State in many cases, and those cases seem to establish, beyond cavil or dispute, that the court of the kind we are considering is not a court of general jurisdiction, but of local and inferior jurisdiction, and limited to the territory embraced within the locality for which the court is constituted.

The contention of the appellant is that the Legislature had no power to extend the jurisdiction of the court in question beyond the limits of the city of Rochester, while it is the contention of the respondent that the Municipal Court is but the successor of the courts of the justices of the peace of the town or towns absorbed by the city of Rochester from the county of Monroe, and that the city of Rochester is in effect but a town of such county and so declared by the Legislature; and that the judges of the Municipal Court are the successors of justices of the peace and should be treated as such in the disposition of this case. Upon this contention of the respondent hinges the only possibility of saving the legislation complained of.

The Municipal Court of Rochester has largely increased powers over those of justices of the peace. Its judges are salaried officers, paid by the city; they are elected by the city and not by the town; they are elected for six years and not for four, and the procedure by which that court exercises its power is different from that of Justices' Courts in important particulars. The concession which must be made, that the Municipal Court of Rochester is a city court and not a town court or a Justice's Court, would seem to dispose of the question, against the respondent.

Section 18 of article 6 of the State Constitution, as it existed prior to January 1, 1895, provided: " The electors of the several towns shall at their annual town meeting, and in such manner as the Legislature may direct, elect justices of the peace, whose term of office shall be four years. * * * Justices of the peace and District Court justices shall be elected in the different cities of this State in such manner and with such powers, and for such terms respectively, as shall be prescribed by law; all other judicial officers in cities whose election or appointment is not otherwise provided for in this article shall be chosen by the electors of cities, or appointed by some local authorities thereof."

This provision of the Constitution was in force during the period covered by the litigation in the Municipal and County Court. The Constitution clearly provides for the election of two classes of justices of the peace, one to act for the towns and the other for the cities, and the attempt to blend these two classes of officers in this case cannot prevail.

If the justice of the peace is elected by the city he is a city officer, and the Legislature can provide his method of election and fix his term of office. If he is a justice of the peace of a town he is a town officer, whose method of election and term of office is fixed by the Constitution itself. If the provision of the Code of Civil Procedure (§ 3226) which states that the Municipal Court is to be deemed a Justice's Court, and each judge thereof deemed a justice of the peace, and that the city of Rochester is deemed to be a town of Monroe county, bears the construction claimed by the respondent, that the city is a town in Monroe county, and that its judges are justices of the peace of that town, with the right to send their processes into every other town of the county, the same as the justices in towns outside of Rochester, it is plain that such a construction would be a violation of the articles of the Constitution. We should rather construe this section of the Code to mean that, so far as practicable, considering the authority and power vested in the justices of the towns and the judges of the City Court respectively, the proceedings in the City Court are to be assimilated to, and be governed by, the practice and laws affecting the courts of justices of the peace.

The reported cases in this State disclose several attempts on the part of the Legislature to confer upon the City Courts the jurisdiction contended for by the respondent, but without success.

In *Geraty* v. *Reid* (78 N. Y. 64), where, under section 35, chapter 125 of the Laws of 1849, it had been provided that the common council of the city of Brooklyn might divide the city into two or more districts, for each of which a justice of the peace should be elected for four years, who should have the same jurisdiction in the city of Brooklyn as justices of towns had in respect to towns for which they had been elected, and should be deemed "*justices of the peace for the county of Kings,*" one of these city justices had issued a summons which was served upon the defendant in the town of New Lots, outside of the city of Brooklyn. Defendant appeared and pleaded to the jurisdiction. Held, that the justice had no power to send his process beyond the city limits, and no jurisdiction was obtained over the defendant; and, further held, in effect, that the act cited would be unconstitutional unless the construction was given it that it only referred to the juris-

diction which might be exercised in the city. And Judge CHURCH says (at p. 67): "The jurisdiction of a *local court* must be exercised within the locality, and its process cannot be executed outside of it. Whatever power constitutional justices of the peace may possess to send their process into adjoining towns, no *local court* created under the clause referred to (the provision of the Constitution for the creation of local and inferior courts) could be vested with that power, and we think that the Legislature did not intend by these acts (the act referred to and chapter 102 of the Laws of 1850) to violate the Constitution."

These acts were only held to be constitutional upon the ground that they were deemed operative only within the city limits.

In *People ex rel. Sinkler* v. *Terry* (108 N. Y. 1) there was a provision in the charter of the village of Canton for the election of a justice of the peace of the village which provided that " the said justice of the peace shall have all the powers of justices of the peace elected by towns at town meetings," etc.

Although the principal question in this case was whether the Legislature was authorized to provide for the election of a justice of the peace in a village (which the court held could be done), the court also decided that the jurisdiction of the justice could not extend beyond the village, and that he was not a constitutional justice of the peace with the same powers as justices of the peace of the town.

In *Waters* v. *Langdon* (40 Barb. 408), chapter 10 of the Laws of 1859, which provided for the election of a police justice by the electors of the village of Whitesborough and clothed him with the same jurisdiction as justices of the peace of the town of Whitestown (the town in which said village was located), was held to be unconstitutional as being in contravention to the constitutional provision which directs that justices of the peace shall be chosen by the electors of the several towns and shall hold their offices for four years.

In *Bocock* v. *Cochran* (32 Hun, 521) chapter 260 of the Laws of 1867, incorporating the village of Coxsackie, providing for the election of a police justice, and conferring upon him, among other powers, "jurisdiction of all criminal cases the same as is now possessed by justices of the peace of towns," was construed as conferring upon the justice jurisdiction of such criminal act only

as should be committed within the territorial limits of the village. The court there seemed to concede that a construction which extended the jurisdiction of the justice outside the village would violate the Constitution. To the same effect is *The Village of Deposit* v. *Vail* (5 Hun, 310).

In *Rockwell* v. *Raymond* (5 N. Y. Supp. 642) a statute had conferred, among other powers, upon the city judge of Yonkers, " the same jurisdiction and power as a justice of the peace of towns," and also civil jurisdiction upon the City Court where the amount did not exceed $1,000, " provided that one of the parties to the action shall be a resident of the city of Yonkers or a resident of a town in the county of Westchester adjoining said city." It was held that the clause just cited, creating jurisdiction over a party outside of the city, was unconstitutional, and Chief Judge THAYER of the City Court, in a clear, exhaustive opinion, which will well repay a perusal upon this subject, cites the authorities bearing upon the question to sustain his conclusion.

In *Pierson* v. *Fries* (3 App. Div. 418), in construing chapter 182 of the Laws of 1892, which created the City Court at Mount Vernon, that, among other things, provided that " the summons in an action brought in the said court may be served at any place within the county of Westchester, but not elsewhere," the Appellate Division of the second department held that this provision of the act was unconstitutional as it exceeded the legislative powers.

In *Curtin* v. *Barton* (139 N. Y. 505) the Court of Appeals held the same as the General Term of the fourth department, that under chapter 342 of the Laws of 1892, establishing a local court of civil jurisdiction in the city of Syracuse, to be called the Municipal Court of that city, and which conferred " the same jurisdiction over the persons of defendants as is now possessed by Justices' Courts of towns," is descriptive of the character rather than the territorial extent of the jurisdiction, and that, taking the whole act together, the intention is manifest to create a court, the jurisdiction of which *shall be confined to the limits of the city.*

And while the question before us was not there expressly decided, we gain the impression from the whole tenor of the decision that, had an attempt been made to extend the jurisdiction beyond the limits of the city of Syracuse, it would not have been sustained.

FOURTH DEPARTMENT, DECEMBER TERM, 1896.          [Vol. 12.

In *The Matter of the City of Buffalo* (139 N. Y. 422) it was held that chapter 557 of the Laws of 1887, authorizing the park commissioners of the city of Buffalo to appraise lands condemned for park purposes located outside of the city limits belonging to a non-resident of the city, was inoperative and void. And that the provisions of the State Constitution, as amended in 1869 (Art. 6, § 12), continuing the Superior Court of Buffalo and certain other local courts " with the powers and jurisdiction they then severally had, and such further civil and criminal jurisdiction as may be conferred by law," did not authorize the Legislature to confer jurisdiction upon said Superior Court over the owner of lands situate outside the city limits.

The learned counsel for the respondent, however, claims that *Geraty* v. *Reid* (*supra*) is not authority in the cases that have arisen since the amendment to the 6th article of the Constitution made in 1869, as that case was decided upon the provisions of the Constitution of 1846, and, as we understand his argument, now claims that section 18 of article 6 of the Constitution, as it existed prior to the amendment of 1869, being " All judicial officers of cities and villages, and all such judicial officers as may be created therein by law, shall be elected at such times and in such manner as the Legislature may direct," whereas, section 19 of article 6, which was created by the amendment of 1869, and which supersedes section 18 above quoted, is as follows : " Inferior local courts of civil and criminal jurisdiction may be established by the Legislature, and, except as herein otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the Legislature may direct."

The only change observable is that section 19 of the amended Constitution does not confine the judicial officers to cities and villages, and, therefore, it may be claimed that the grant of power in section 19 is broad enough to authorize the Legislature to pass the act, the constitutionality of which is here assailed. It is difficult to see how this amendment changes the situation. Section 19 of the amended Constitution is dealing with inferior local courts of civil and criminal jurisdiction which may be established by the Legislature, and the judicial officers therein referred to would seem to be the officers of such inferior or local courts — at least we are

not to assume that this provision was intended to override the pro-
visions of section 18 of article 6 of the Constitution, providing for
the election of justices of the peace of towns.

In *Landers* v. *Staten Island R. R. Co.* (53 N. Y. 450) it was
held that the provisions of the judiciary article of the State Consti-
tution, as amended in 1869 (Art. 6, § 12), continuing the Superior
Court of the city of New York, the Court of Common Pleas of the
city and county of New York, the Superior Court of Buffalo and
the City Court of Brooklyn, with the powers and jurisdiction they
then had, " and such further civil and criminal jurisdiction as may
be conferred by law," does not authorize the Legislature to change
the character of these courts by divesting them of their locality and
extending their jurisdiction to persons and matters, the subjects of
actions in other parts of the State outside of the locality wherein
such courts are established, and that when the Constitution speaks
of " further civil and criminal jurisdiction " it has respect to the
object of the jurisdiction, not to the territory or the persons of
suitors, and by said article the courts therein mentioned were con-
tinued with the same territorial and personal jurisdiction, with power
to the Legislature to enlarge their jurisdiction over subjects and
matters civil and criminal in their nature, and over the proper subjects
of civil and criminal prosecution ; that when jurisdiction is spoken
of it had not respect to the residence of the plaintiff, but to the sub-
ject-matter and cause of action and to the person of the defendant.

The jurisdiction of these local courts is limited to causes of action
arising within the territorial limits of the tribunal or to cases in
which the parties proceeded against reside in or are served with pro-
cess within the jurisdiction.

This case is cited as indicative of the view of the Court of Appeals
in restricting the jurisdiction of local courts to the territory within
which they are created and in not permitting them to extend their
jurisdiction beyond their territorial limits, and as a construction by
that high court of the extent of the power granted to the local
courts of " further civil and criminal jurisdiction."

In addition to the cases cited as sustaining the views here
announced the following may be considered : *Anderson* v. *Reilly*
(66 N. Y. 189); *Sill* v. *The Village of Corning* (15 id. 297); *Hoag*
v. *Lamont* (60 id. 96); *Wheelock* v. *Lee* (74 id. 495); *Brandon* v.

*Avery* (22 id. 469); *People ex rel. Townsend* v. *Porter* (90 id. 68).

The importance of the subject under consideration would seem to justify the somewhat extended examination of the authorities which we have made.

We reach with reluctance the conclusion that that portion of the act of the Legislature in question that attempts to give the Municipal Court of Rochester jurisdiction outside the limits of the city is unconstitutional and void.

The scheme of the Constitution as to the courts of this State and their jurisdiction is clear. The Court of Impeachment, the Court of Appeals, the Supreme Court, the County Courts and the Surrogates' Courts have well-defined duties. The local and inferior courts take their places with defined and limited jurisdiction. None of these local courts is intended to trench upon or overthrow the jurisdiction of any of the superior courts, and while jurisdiction in some courts is concurrent, it is not conflicting, but proceeds in harmonious lines.

The attempt here is to give a local city court the prerogative of the justice of the peace of the town without complying with the constitutional prerequisites by which a town justice of the peace can be created, and by creating confusion by forcing the jurisdiction of a local court outside of the locality from which its existence springs. Judge ANDREWS in *People ex rel. Townsend* v. *Porter* (*supra*) well says (at p. 76): " The Constitution seems carefully to guard the autonomy of the several divisions in all matters of local government, and to avoid, as far as practicable, any confusion or division of powers, or any obliteration of their local independence and control in all matters of local government."

While, as we have said, the exact letter of the constitutional law does not condemn this legislation, it is contrary to the spirit and purpose of the Constitution, and, if sustained, may be destructive of it.

The conclusion which we have reached does not destroy the existence of the Municipal Court of Rochester, or disturb its jurisdiction in that city. It only lops off the unconstitutional branch of chapter 561 of the Laws of 1890, which extends the jurisdiction of the Municipal Court outside of the limits of the city of Rochester. In

so doing simple justice will be done to all concerned. The city of Rochester will not be burdened with litigation that belongs to the towns of Monroe county, nor will such towns be deprived of their appropriate and natural jurisdiction, and conflicts of jurisdiction between the several courts will be avoided.

The order of the County Court should be reversed, with ten dollars costs and the disbursements of this appeal.

All concurred.

Ordered reversed, with ten dollars costs and disbursements.