(25 Misc. Rep. 74.)

### TOBIAS v. PERRY.

(Steuben County Court. October, 1898.)

JUSTICES OF THE PEACE—JURISDICTION—CITIES—INFERIOR LOCAL COURTS.

     Corning City Charter (Laws 1890, c. 58, tit. 7, § 11), extending the civil jurisdiction of justices of the peace for the city to the whole county, was unconstitutional, since Const. 1846, art. 6, § 18, as amended in 1869, providing that justices should be elected in cities in such manner and with such power as should be prescribed by law, must be read with section 19, which provided that inferior local courts might be established by the legislature (the latter courts not having jurisdiction outside the city, notwithstanding a previous provision restricting such courts to cities had been removed); and this was not affected by section 18 being afterwards altered so as to include such powers "as are" prescribed by law. Const. 1895, art. 6, §§ 17, 18.

Appeal from justice court.

Action by Daniel I. Tobias against Andrew M. Perry. From a judgment by a justice of the peace of the city of Corning in favor of plaintiff, defendant appeals. Reversed.

Leslie W. Wellington, for appellant.
James O. Sebring, for respondent.

ROBINSON, J. This is an appeal brought by the defendant from a judgment rendered upon default by B. F. Marritt, a justice of the peace of the city of Corning. The summons was served within the limits of the town of Corning, outside of the city of Corning. The sole question presented upon this appeal is whether a justice of the peace of the city of Corning has authority to send a summons outside of the city limits for service, the same as justices of the peace of towns. The city of Corning, and, of course, its courts and officers, were created by chapter 58 of the Laws of 1890, which contains, among others, the following provisions: "Two justices of the peace * * * shall be elected by the city at large." Title 2, § 1. "The

term of office of justices of the peace shall be four years." Title 2, § 2. Justices of the peace of the city of Corning are required to take and file in the office of the clerk of the county of Steuben oaths of office, and give the bond required by law. Title 7, § 11. This section also deprives said justices of criminal jurisdiction, but attempts to confer upon them "jurisdiction where either or both of the parties reside in any of the towns of Steuben county adjoining the town of Corning." There is clearly no intention to create a criminal court, but a very clear intention to preserve the office of justice of the peace of the city, possessing the same jurisdiction (except criminal) possessed by justices of the peace of towns.

This court appreciates the fact that unless the provisions of the charter of the city of Corning, and similar provisions of other cities, can be upheld, the people residing within the territorial limits of such cities are deprived of much of the advantages now possessed by the inhabitants of towns, and must seek courts outside of the city in which to conduct much of their litigation. This inconvenience is very great and annoying, and jurisdiction should be co-extensive with that of towns. Perhaps this was the intention when the change was made, permitting the election of justices of the peace in cities; but the trend of authority seems to lead to the logical result that the provisions of sections 17 and 18 of article 6 of the constitution are to be construed together, so that when it refers to justices of the peace in cities the intention is to treat them as "inferior local courts," possessing jurisdiction only within the locality, to wit, the city in which they are elected. The office of justice of the peace for cities is not the creature of the constitution, and a general law, as is the case with the towns; but the creation of this court, the term of office, the number of the justices for each city, and whether to be of civil or criminal jurisdiction or both, are left entirely to special legislation to establish for a certain locality only. Then such justices are created by the legislature to be judicial officers of a city, and, of course, they hold inferior courts as well as local courts. That being so, why do not the decisions hereinafter referred to, in relation to any inferior local court created by the legislature, apply as well to the court and office of justice of the peace created by the charter of the city of Corning?

The following changes have taken place in the constitution of the state of New York: By the constitution of 1821 (article 4, § 7), justices of the peace were not elected, but were appointed by the boards of supervisors of the several counties, and were at that time held to be county, and not town, officers. Gertum v. Board, 109 N. Y. 174, 16 N. E. 328; People v. Keeler, 25 Barb. 426; Ex parte McCollum, 1 Cow. 550; People v. Garey, 6 Cow. 642; Gurnsey v. Lovell, 9 Wend. 319. By section 17 of article 6 of the constitution of 1826, justices of the peace could only be elected in the towns of the state. "The electors of the several towns shall, at their annual town meeting, and in such manner as the legislature may direct, elect justices of the peace, whose term of office shall be four years." Since the constitution of 1826, they have been town officers, but

come under a general law applying to the whole state. Gertum v. Board, supra; People v. Morrell, 21 Wend. 563. The constitution of 1846 contains the same provision as that of 1826 with regard to justices of the peace. Const. 1846, art. 6, § 17. Down to this time we have no constitutional authority for the election of justices of the peace in cities, although the reasoning contained in the opinion of Geraty v. Reid, 78 N. Y. 64, is followed in some of the later decisions. It will be observed that this decision was because of the constitution of 1846, and the peculiar phraseology of the charter of the city of Brooklyn. The court refrained from expressing an opinion as to what effect should be given to the amendment of 1869. The amendment, after providing for justices of the peace of towns, is as follows: "Justices of the peace and district court justices shall be elected in the different cities of this state, in such manner, and with such powers, and for such terms, respectively, as shall be prescribed by law." Const. art. 6, § 18. This new provision now for the first time appears. We still have the other provision, namely, "Inferior local courts of civil and criminal jurisdiction may be established by the legislature in cities." Const. 1846, art. 6, § 14. Section 19 of article 6 of the constitution of 1846, as amended in 1869, was a substitution for this section of the old constitution of 1846. It reads as follows: "Inferior local courts of civil and criminal jurisdiction may be established by the legislature and, except as herein otherwise provided, all judicial officers shall be elected or appointed in such manner as the legislature may direct." By section 17 of article 6 of the constitution of 1895, the same provision is made as heretofore for the election of justices of the peace in towns, and also this provision: "Justices of the peace and district court justices may be elected in the different cities of this state in such manner, and with such powers, and for such terms, respectively, as are or shall be prescribed by law." It will be noticed that there are just two changes in the language. The word "shall" is changed to the word "may" and the words "are or" have been inserted prior to the language "shall be prescribed by law."

Query: Assuming that the provisions of the charter of the city of Corning were unconstitutional at the time of enactment, would the constitution of 1895, which became the law thereafter, because of the language above referred to, ratify the charter, and render its provisions constitutional, in so far as it applies to the office of justices of the peace? Section 18 of article 6 of the constitution of 1895 reads as follows: "Inferior local courts of civil and criminal jurisdiction may be established by the legislature, but no inferior local court hereafter created shall be a court of record." Section 20 of article 6 of the new constitution has the same provision as section 21 of article 6 of the constitution, as amended in 1869, providing that "no judicial officer, except justice of the peace, shall receive to his own use any fees or perquisites of office." It will thus be seen that the constitution of 1895 made no substantial change to the amendment of 1869, and that both the amendment of 1869 and that of 1895 provide for the election of justices of the peace in cities as well

as in towns, and also for the creation of inferior local courts, but the latter is not now confined to cities. Right here it would be well enough for me to call attention to the language of the constitution of 1846, prior to the amendment of 1869, the language of which would seem to confine inferior local courts to cities only; but the words "in cities" were omitted in the amendments of 1869 and 1895.

Counsel for the respondent claims that there is still no constitutional authority for the election of justices of the peace in villages, and contends that the decisions, in so far as they apply to villages, have no application,—citing Brandon v. Avery, 22 N. Y. 469, which arose in the village of Ilion, in this state; People v. Terry, 108 N. Y. 1, 14 N. E. 815, which arose in the village of Canton; Waters v. Langdon, 40 Barb. 408, which arose in the village of Whitesboro; Bocock v. Cochran, 32 Hun, 521, which arose in the village of Coxsackie; Village of Deposit v. Vail, 5 Hun, 310, which arose in the village of Deposit; Sill v. Village of Corning, 15 N. Y. 299, which arose in the village of Corning.

Query: What effect should be given to the omission in the provisions of the amendments of 1869 and 1895 of the words "in cities"?

Counsel for the respondent contends that there are three lines of decisions. First. Cases decided under constitutions which only provided for the election of justices of the peace in towns; consequently then all city justices held inferior local courts. Geraty v. Reid, 78 N. Y. 64; People v. City of Rochester, 11 Hun, 241. Second. Those which have references to villages, as above set forth; there being no constitutional provision for the election of justices of the peace in villages. Third. Those that apply to municipal courts created by the legislature, which come under the clause known as "inferior local courts," as follows: Baird v. Helfer, 12 App. Div. 23, 42 N. Y. Supp. 484, which arose out of the municipal court of the city of Rochester; Ziegler v. Corwin, 12 App. Div. 60, 42 N. Y. Supp. 855, which arose out of the same court; Rockwell v. Raymond (City Ct. Yonkers) 5 N. Y. Supp. 642, arose out of the city court of the city of Yonkers; Pierson v. Fries, 3 App. Div. 418, 38 N. Y. Supp. 765, arose out of the city court of the city of Mt Vernon; Curtin v. Barton, 139 N. Y. 505, 34 N. E. 1093, arose out of the city court of the city of Syracuse; In re City of Buffalo, 139 N. Y. 422, 34 N. E. 1103, arose out of the superior court of the city of Buffalo; Landers v. Railroad Co., 53 N. Y. 450, arose out of the city court of the city of Brooklyn; Wenzler v. People, 58 N. Y. 516, police justices of the city of New York; Anderson v. Reilly, 66 N. Y. 189, courts of record in the city of New York; Hoag v. Lamont, 60 N. Y. 96, city court of Brooklyn; People v. Porter, 90 N. Y. 68, Niagara police district court; Conor v. Hilton, 66 How. Prac. 144, the statutes here limited to the jurisdiction "within the city" of Albany.

Counsel also claims that, in so far as the city of Corning is concerned, there was no attempt to create a municipal court, and that no court whatever was created,—the charter simply providing, in pursuance of the constitution, authority for the election of justices of the peace,—and argues that the same effect should be given to the

law as if the town of Corning had been divided into two towns, instead of the town of Corning and the city of Corning. Counsel admits that, if any effort had been made to create a municipal or city court, then they would have been under the decisions above set forth, and their jurisdiction limited to the city; but he contends, in view of the fact that the old town of Corning was divided, and justices of the peace also provided for, that there was not thereby created an "inferior local court," within the meaning of the constitution, but that the justices of the peace provided for had the same constitutional authority, so far as territory was concerned, as those of towns; that there was really no difference or actual limitation provided for in the constitution. But the trouble is that the constitution does not affirmatively give such jurisdiction, and it requires special legislation for a certain locality to create city courts and justices of the peace in cities.

It is, with a good deal of force, argued by counsel that the question has never been presented to the courts of this state, as here presented, and that it is now an open question; also, that the decisions heretofore made, where any effort was made to define the territorial jurisdiction of justices of the peace of cities, was under a constitution which gave no authority for their election, or, if such decisions were made after there was such authority, they were interpretations of acts creating municipal courts. I am inclined to believe that counsel is right in his contention, but the language of not only the cases in this department, but of all of the decisions of this state, have gone so far in discussing the broad principle that I am laboring under the impression that the views of the courts as thus expressed will never be changed, unless by constitutional provisions clearly stating the fact that justices of the peace of cities may issue processes which can be served outside of the city limits, the same as in towns.

Since writing the above, I have seen the opinions of the Cayuga county judge (Armstrong v. Kennedy, 23 Misc. Rep. 47, 51 N. Y. Supp. 509) and the Niagara county judge (Shaeffer v. Steadman, 24 Misc. Rep. 267, 53 N. Y. Supp. 586), and like the reasoning contained in these able opinions, and hope that they may be sustained; but I believe that I am in line with opinions of the higher courts, and have no reason to believe that there will be any departure from the many dicta that justices of the peace of cities are confined to the territorial limits of their respective cities. I am therefore constrained to reverse the judgment, for the error in fact not affecting the merits, but without costs to either party.

Judgment reversed, without costs.